UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

─────────────────

Nos. 99-4855(L)
(CR-98-82)

─────────────────

United States of America,

Plaintiff - Appellee,

versus

Eugene Strickland, et al.,

Defendants - Appellants.

─────────────────

O R D E R

─────────────────

The court amends its opinion filed April 3, 2001, as follows:

On page 12, footnote 1, line 10 -- the reference to "235 U.S. 192" is corrected to read "235 F.3d 192."

On page 21, third full paragraph, line 1 -- the reference to "28 U.S.C. § 846" is corrected to read "21 U.S.C. § 846."

On page 22, second full paragraph, lines 3-4 -- the reference to "853 F.2d 214" is corrected to read "853 F.2d 215."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> <u>Plaintiff-Appellee,</u> | |
| v. | No. 99-4855 |
| EUGENE STRICKLAND, <br> <u>Defendant-Appellant.</u> | |
| UNITED STATES OF AMERICA, <br> <u>Plaintiff-Appellee,</u> | |
| v. | No. 99-4856 |
| MARSHALL STRICKLAND, <br> <u>Defendant-Appellant.</u> | |
| UNITED STATES OF AMERICA, <br> <u>Plaintiff-Appellee,</u> | |
| v. | No. 99-4857 |
| TIFFANY GRAHAM <br> <u>Defendant-Appellant.</u> | |
| UNITED STATES OF AMERICA, <br> <u>Plaintiff-Appellee,</u> | |
| v. | No. 99-4858 |
| EMILY CHARITY CHAVIS, a/k/a Pooh, <br> <u>Defendant-Appellant.</u> | |

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 99-4859

MICKEY STRICKLAND,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 99-4860

ROBERT M. STRICKLAND, a/k/a Punch,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 99-4861

LEON STRICKLAND,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 99-4862

MITCHELL KELLY CHAVIS,
Defendant-Appellant.

2

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                              No. 99-4863

TRAVIS STRICKLAND,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                              No. 99-4864

PATRICIA MCGIRT,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CR-98-82)

Argued: January 26, 2001

Decided: April 3, 2001

Before NIEMEYER and MICHAEL, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Senior Judge Michael joined. Judge Michael wrote an opin-
ion concurring in part and concurring in the judgment.

_____

3

**COUNSEL**

**ARGUED:** Robert John McAfee, MCCOTTER, MCAFEE & ASH-TON, New Bern, North Carolina; Felix Thomas Holt, III, BEAVER, HOLT, RICHARDSON, STERNLICHT, BURGE & GLAZIER, P.A., Fayetteville, North Carolina; Vaughan Sharp Winborne, Jr., Raleigh, North Carolina; Hart Miles, Jr., Raleigh, North Carolina, for Appellants. Mary Jude Darrow, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Richard B. Glazier, BEAVER, HOLT, RICHARDSON, STERNLICHT, BURGE & GLAZIER, P.A., Fayetteville, North Carolina, for Appellant Marshall Strickland; Gregory J. Ramage, Raleigh, North Carolina, for Appellant Graham; Mark E. Edwards, EDWARDS & FLEMMING, P.L.L.C., Durham, North Carolina, for Appellant Emily Chavis; James M. Ayers, II, New Bern, North Carolina, for Appellant Mickey Strickland; Robert L. Cooper, COOPER, DAVIS & COOPER, Fayetteville, North Carolina, for Appellant Mitchell Chavis; Carlton M. Mansfield, Lumberton, North Carolina, for Appellant Travis Strickland; David K. Williams, Jr., Greensboro, North Carolina, for Appellant McGirt. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

On appeal from their convictions for conspiracy to traffic in drugs and related offenses, the ten defendants in this case challenge their sentences under <u>Apprendi v. New Jersey</u>, 120 S. Ct. 2348 (2000), maintaining that they were improperly denied the right to have the jury find drug quantities and other sentence-enhancing facts. Various defendants also assign error based on (1) the use of evidence from an illegal search, (2) a second trial after a mistrial in violation of the Double Jeopardy Clause, (3) the failure to sever several of the defendants' cases, (4) the insufficiency of evidence, (5) the admission of irrelevant and prejudicial evidence, (6) prosecutorial misconduct, (7) the rejection of the "public authority" defense, and (8) the attribution

4

of excessive drug quantities for sentencing purposes. For the reasons that follow, we reject each of these contentions and affirm.

I

The Strickland family organization was engaged in extensive cocaine and cocaine base ("crack cocaine") distribution in Maxton, Robeson County, North Carolina, over the period from 1989 to 1999. Eugene Strickland and Marshall Strickland were primary sources for cocaine and cocaine base sold principally from three open-air locations in Robeson County -- at a well-known curve on North Carolina State Route 130 ("Deep Curve"); at "Mickey's Place" and the shop behind it; and at Eugene Strickland's residence. They were in turn supplied during part of the period by Tiffany Graham. Emily Charity Chavis assisted Eugene Strickland in managing the money as well as in selling cocaine. Leon Strickland, Mickey Strickland, Robert "Punch" Strickland, Mitchell Kelly Chavis, and Travis Strickland received cocaine from Eugene Strickland and Marshall Strickland and sold it on the street, mostly at the three locations in Robeson County. Patricia McGirt was the mother of Emily Charity Chavis and was present at times when Eugene Strickland sold cocaine. She also assisted Eugene Strickland and Emily Charity Chavis and others to purchase cocaine from one of Eugene Strickland's sources and hosted one of his sources at her home.

Ten members of the conspiracy were tried in this case, and all were convicted, but more than 15 other related cases were separately prosecuted against others. While the court granted motions for judgment of acquittal in favor of Eugene Strickland and Marshall Strickland (Counts II and III) for firearms offenses, the jury convicted all defendants of conspiracy to engage in drug trafficking, in violation of 21 U.S.C. §§ 846 & 841(a)(1), and Eugene Strickland and Travis Strickland of one count each for firearms offenses.

The district court sentenced Eugene Strickland to life imprisonment plus 60 months for his firearm count; Travis Strickland to 188 months imprisonment plus 60 months for his firearm count; Marshall Strickland to 400 months imprisonment; Tiffany Graham to 292 months; Emily Charity Chavis, 292 months; Mickey Strickland, 235 months; Robert "Punch" Strickland, 292 months; Leon Strickland, 292

5

months; Mitchell Kelly Chavis, 262 months; and Patricia McGirt, 63 months. Each of the defendants was also sentenced to a five-year term of supervised release and ordered to pay a fine. These appeals followed.

II

The defendants' most significant argument is that their sentences for drug-trafficking crimes were improperly enhanced by the quantity of drugs involved. They argue that they were not charged with the amount of drugs that would enhance their sentences and that the jury was not instructed to find the enhanced amounts beyond a reasonable doubt. Rather, the enhancements were found by the sentencing judge as part of the sentencing process. More specifically they contend that

> [w]hen a statutory "sentencing factor", specifically drug quantity, increases the maximum sentence beyond the sentencing range that would otherwise be allowed by the jury's verdict, the factor is no longer simply a matter of sentencing, but an element of a different crime.

Directing their argument to the circumstances in this case, the defendants contend:

> There is simply no question that the indictment failed to set out, with any specificity, the amount of drugs the defendant was charged with under § 841; the jury charge issued in this case did not require the jury to make any factual finding of the amount of narcotics involved; the jury verdict only required the defendant to be found guilty or not guilty as to Count 1 with no special interrogatory attached, (J.A. at 2107); and the ultimate finding against the defendant of the amount of narcotics was made by the trial judge at sentencing on a preponderance of the evidence standard alone.

The defendants assert that taking the issue of enhancing drug quantities from the jury denied them the due process guaranteed by the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment. They base their arguments on two recent Supreme Court

6

decisions, <u>Jones v. United States</u>, 526 U.S. 227 (1999), and <u>Apprendi v. New Jersey</u>, 120 S. Ct. 2348 (2000). The defendants claim that they preserved this error at trial through their generalized challenge to drug quantities made during sentencing. In the alternative, they argue, the error amounted to a "plain error" that we should notice and correct under the analysis of <u>United States v. Olano</u>, 507 U.S. 725 (1993).

The government contends that the <u>Apprendi</u> defense cannot apply to all of the defendants, because several were sentenced to a term of imprisonment under 240 months, the lowest maximum amount for conspiring to traffic in cocaine and cocaine base in violation of 21 U.S.C. § 846. <u>See</u> 21 U.S.C. §§ 846, 841(b)(1)(C). As to those defendants for whom the argument can be made that their sentences were enhanced beyond 240 months because of the quantity of drugs involved, the government concedes, based on our no-longer viable decision in <u>United States v. Angle</u>, 230 F.3d 113 (4th Cir. 2000), that the district court erred under <u>Apprendi</u> and that the error was plain. The <u>Angle</u> decision, however, has since been vacated by our order to rehear that case <u>en banc</u>. Rather than challenging whether there was error, the government argues that, because the error was not preserved, it can only be reviewed under plain-error principles. Under those principles, the defendants whose sentences were enhanced beyond 240 months because of the quantity of drugs involved could not take advantage of the error because it did not affect their substantial rights. The government states that "overwhelming evidence established that the conspiracy involved far greater quantities of crack cocaine than those required to support the defendants' sentences."

We begin with the necessary observation that none of the defendants in this case objected to the indictment for its failure to charge drug quantities; none requested an instruction that the jury be required to find drug quantities; and none requested a special interrogatory on drug quantities or objected to a general verdict. Indeed, during sentencing, while some of the defendants objected to the attribution of some drug quantities, none challenged the conclusion that the government proved the minimum amount of drugs to give rise to a life sentence under § 841(b). <u>See</u> 21 U.S.C. § 841(b)(1)(A) (providing that trafficking in 5 kilograms of cocaine or 50 grams of crack may be punished by up to life imprisonment). Thus, because the antecedents for making an <u>Apprendi</u> argument were not preserved during trial --

7

indeed <u>Apprendi</u> had not yet been decided-- we can only review the defendants' objections on appeal for plain error under Federal Rule of Criminal Procedure 52(b). <u>See United States v. Lewis</u>, 235 F.3d 215, 218 (4th Cir. 2000).

Rule 52(b) provides:

> Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

This rule requires (1) the demonstration of an "error" (2) that was "plain" and (3) that affected the "substantial rights" of the defendant. <u>See Olano</u>, 507 U.S. at 731-32; <u>Lewis</u>, 235 F.3d at 219; <u>United States v. Bowens</u>, 224 F.3d 302, 315 (4th Cir. 2000); <u>United States v. Hastings</u>, 134 F.3d 235, 239 (4th Cir. 1998). Even after the defendants satisfy the requirements of Rule 52(b), the court is left with the discretionary decision of whether to notice or recognize the error. But in the exercise of that discretion, a court may notice or recognize a plain error only when it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." <u>Bowens</u>, 224 F.3d at 315 (quoting <u>Olano</u>, 507 U.S. at 736) (internal quotation marks and other citations omitted).

Because of the procedural course of this case, there might not even be an error under <u>Apprendi</u>. The defendants were charged with a single count of conspiracy to traffic in cocaine and cocaine base over a period of 10 years. The second superseding indictment charged, "During the course of the conspiracy, at least five (5) kilograms of cocaine and fifty (50) grams of cocaine base (crack) were possessed and distributed." And at trial, the evidence presented to the jury, as is detailed below, demonstrated amounts far exceeding the amounts charged. Indeed, the very first transaction, of probably hundreds during the course of the conspiracy, involved the sale of one-and-a-half kilograms of cocaine base, 30 times the minimum amount required to expose members of the conspiracy to a life sentence. <u>See</u> 21 U.S.C. § 841(b)(1)(A)(iii). The presentence reports in this case indicate that the conspiracy involved over 38 kilograms of cocaine base. Finally, the district court's instructions to the jury suggested that what was

8

charged had to be proved beyond a reasonable doubt to find guilt. The court stated:

> Unless the government proves beyond a reasonable doubt that the Defendants have committed every element of the offenses with which they have been charged, you must find the Defendants not guilty of those offenses.

* * *

> The Defendants are not on trial for any act or conduct or offense not alleged in the indictment.

Moreover, when instructing the jury about how they might find the intent requirement, the court stated that the jury could consider "the purity of the controlled substance, the quantity of the controlled substance, the presence of equipment used in processing or sale of the controlled substances, and large amounts of cash or weapons." On this record, we might well be able to conclude that defendants have not established any Apprendi error because they failed to show that the issue of drug quantity was not submitted to the jury. See United States v. Richardson, 233 F.3d 223, 230-31 (4th Cir. 2000). The jury was not, however, specifically directed to find drug quantities and the verdict was only a general verdict of guilt. Moreover, it is not clear from the record whether the jury was provided with a copy of the indictment or whether the drug quantities from the indictment were read to the jury. Although the defendants have the burden of establishing each element of plain error, see Hastings, 134 F.3d at 239, our doubt about whether the jury did find drug quantities compels us to consider the next two prongs of the plain-error analysis.

Because our Angle opinion controlled at the time that the government submitted its brief on appeal, the government conceded that plain error was committed and argues only the effect of the error. But with Angle vacated, we are left to determine whether the district court's sentences for violations of 21 U.S.C. § 841, including sentences over 240 months, based on judicial findings of drug quantities, amounted to error under Apprendi.

9

In Apprendi, the issue presented to the Supreme Court was whether the sentencing judge could enhance a sentence when the conduct constituted a "hate crime" -- i.e., one committed "with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." Apprendi, 120 S. Ct. at 2351 (quoting N.J. Stat. Ann. § 2C:44-3(e)). The defendant had fired several bullets at the house of an African-American family that had recently moved into a previously all-white neighborhood. After the defendant pled guilty to a firearm possession count, for which the maximum sentence was ten years imprisonment, the sentencing court enhanced that maximum sentence by two years, relying on a New Jersey statute that permitted enhancement when the offense was racially motivated. The court thus sentenced the defendant to a twelve-year term, which was longer than the ten-year maximum for firearm possession. The Supreme Court of the United States reversed, concluding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2362-63. Because the defendant had not admitted his racial bias during the plea agreement and the state had not proved that bias to a jury beyond a reasonable doubt, the maximum punishment that could be imposed for firearm possession was ten years. While the Court in Apprendi recognized that it had earlier, in Jones v. United States, only "expressed serious doubt concerning the constitutionality of allowing [any] penalty-enhancing findings to be determined by a judge by a preponderance of the evidence," 120 S. Ct. at 2353, the Court in Apprendi applied the principle but limited its application to factual determinations "that increase[] the penalty for a crime beyond the prescribed statutory maximum," id. at 2362-63 (emphasis added).

At the core of both Jones and Apprendi was a recognition that a legislature may prescribe both the elements of the offense and factors for sentencing, and that under our system, trial responsibility is divided between the jury, which finds guilt or innocence, and the court, which imposes the sentence. See Jones, 526 U.S. at 232; Apprendi, 120 S. Ct. at 2358; see also Almendarez-Torres v. United States, 523 U.S. 224, 228 (1998) (observing that it is "normally a matter for Congress" to distinguish between elements of the crime and factors for sentencing); McMillan v. Pennsylvania, 477 U.S. 79, 85

10

(observing that a "legislature's definition of the elements" of an offense is "usually dispositive"). In Jones, the Supreme Court continued also to approve the different burdens of proof in finding guilt and in finding factors that may enhance a sentence. See Jones, 526 U.S. at 248. The constitutional issue arises not from the distinct roles of judge and jury, nor from the different burdens of proof, but from the functional blurring of the roles. See id. at 239-48.

Tools of statutory interpretation thus may resolve the preliminary question of whether Congress (or a legislature) intended a factor to be an element of the offense or a sentencing factor. See, e.g., Almendarez-Torres, 523 U.S. at 238. When the statute is ambiguous and is susceptible of two constructions -- one in which the statutory factor might be an element of the offense and the other where it might be merely a sentencing enhancement -- then we resolve the ambiguity by adopting the interpretation that avoids the Sixth Amendment issue of denying a right to jury trial on an element of the offense. See Jones, 528 U.S. at 239, 251-52. In Jones, however, the Court noted that "some statutes come with the benefit of provisions straightforwardly addressing the distinction between elements and sentencing factors," id. at 232, and in those cases, Congress' intent should be controlling, at least as a matter of statutory interpretation.

In this case, it is arguable as a matter of statutory interpretation that Congress' intent in 21 U.S.C. § 841 is clear. The statute sets forth the offense in 21 U.S.C. § 841(a) under the heading "Unlawful Acts," and the sentences in § 841(b) under the heading "Penalties." One can conclude from a "straightforward" reading that the factors in subsection (b) are therefore all sentence enhancements. The fact that the sentencing range is fractured into sub-ranges, depending on the type of drug involved and its amount serves precisely the same function as do the similar sub-ranges found in the Sentencing Guidelines. See Almendarez-Torres, 523 U.S. at 229-35 (finding, as a statutory matter, that an analogous enhancement was a sentencing factor). Indeed, the Almendarez-Torres Court repeatedly referred to 21 U.S.C. § 841 as an example of a statute where the statutory enhancements to increase the penalty were sentencing factors. See 523 U.S. at 230, 236.

But both Jones and Apprendi make clear that even if a statute is unambiguous, the constitutional question of whether the legislature

11

improperly took from the jury its right to decide an element of the offense, by including it as a sentencing factor, still must be addressed. See Jones, 526 U.S. at 232, 248; Apprendi, 120 S. Ct. at 2360 ("constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense"). Arguably, however, Apprendi makes Congress' intent dispositive on the constitutional issue by requiring only that facts which increase the penalty beyond the statutory maximum be decided by the jury. But this still may not resolve whether 21 U.S.C. § 841(b), with its sub-ranges of sentences, impermissibly takes away from the jury factfinding on an element of the offense, an issue that we are scheduled to address in our rehearing of Angle. We need not even confront the issue today, however, because the further analysis of defendants' claim under plain-error principles -- whether the error affected the defendants' substantial rights -- leads us to a more certain, and therefore satisfactory, determination on the defendants' Apprendi claim.[1]

The substantial rights that defendants claim were affected in this case are the rights to be given notice of drug quantities in the indictment and to have these quantities determined by the jury, rather than the court, under the reasonable-doubt standard.

First, the assertion that the indictment failed to give the defendants notice is meritless. The indictment charged the defendants with a conspiracy continuing over the course of a ten-year period, beginning in 1989, to traffic in cocaine and crack cocaine. The indictment states that "at least five (5) kilograms of cocaine and fifty (50) grams of cocaine base (crack) were possessed and distributed" during the con-

_____

[1] Because Travis Strickland, Mickey Strickland, and Patricia McGirt were sentenced to less than 240 months imprisonment, the lowest maximum sentence for any violation of 21 U.S.C. § 841(a) based on cocaine trafficking, they cannot attempt to assert any Apprendi argument. As we have held, "[b]ecause the sentencing enhancements . . . did not extend [the defendant's] sentence beyond the maximums prescribed for his offenses by the substantive provision of the United States Code, the government was not required to submit to a jury and prove beyond a reasonable doubt the facts relevant to those enhancements." United States v. Kinter, 235 F.3d 192, 202 (4th Cir. 2000).

12

spiracy. These allegations adequately gave the defendants notice, and their rights in this regard were not adversely affected.**2**

The question, however, of whether the failure to have the jury decide drug quantities affected the defendants' substantial rights requires some analysis. The substantial rights requirement is not satisfied by merely showing that the court did not submit an element of the offense to the jury; the error must have caused prejudice. See Olano, 507 U.S. at 734; Hastings, 134 F.3d at 241. And unlike the harmless-error test, imposed by Federal Rule of Criminal Procedure 52(a), under which the government bears the burden of showing that an error did not result in any prejudice, the defendant bears the burden of showing prejudice under the plain-error test of Federal Rule of Criminal Procedure 52(b). See id.; see also Hastings, 134 F.3d at 240. The defendants must thus demonstrate that the jury would not have found, beyond a reasonable doubt, that the defendants conspired to traffic in at least 5 kilograms of cocaine or 50 grams of crack. See United States v. Mojica-Baez, 229 F.3d 292, 307 (1st Cir. 2000) (considering, in determining whether substantial rights were affected, "what prospects there were that submission of the question to the jury would have resulted in a different outcome, keeping in mind the higher standard of proof required before the jury"); see also United States v. Swatzi, 228 F.3d 1278, 1282-83 (11th Cir. 2000); United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) (noting that even a preserved Apprendi error can be harmless if "the record does not contain evidence that could rationally lead to a contrary finding with respect to drug quantity").

While the harmless error analysis imposes the burden of showing an absence of prejudice on the government and the plain-error analysis under Rule 52(b) imposes the burden of showing prejudice on the defendant, in both cases the prejudice turns on whether substantial rights of the defendant were affected. To this extent, the analysis in Neder v. United States, 527 U.S. 1 (1999), applying principles of harmless error, proves instructive. In Neder, the trial court failed to instruct the jury on materiality, an element of the offense for which the defendant was charged. As a consequence, the jury necessarily

_____

**2** In their Reply Brief, the defendants concede that the indictment was "sufficient."

13

made no finding on materiality. The Supreme Court held that this error was subject to a harmless-error analysis under Rule 52(a) and that an error is harmless when "it appears `beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. at 15 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). Articulating the particular test for when an omitted instruction on an element of an offense is harmless, the Court stated:

> Where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.

Id. at 17. The Court observed that an application of this test will often require the reviewing court to conduct a thorough examination of the record to determine, beyond a reasonable doubt, whether the jury verdict would have been the same absent the error. If the reviewing court concludes that the verdict would not have been the same, "for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding," the error would not be harmless. Id. at 19.

In this plain-error case before us, the defendants have not met their heavy burden, as we easily conclude, beyond a reasonable doubt, that the jury verdict would have been the same had the jury been asked specifically to find whether the conspiracy in this case involved more than 5 kilograms of cocaine or 50 grams of crack cocaine. No defendant suggested that these amounts had not been proven at trial, and we conclude that the uncontroverted evidence demonstrated amounts hundreds of times more than the amounts charged. The government points to the following evidence, as is confirmed in the record, which demonstrates the large amount of drugs involved:

> Jacquelin Sainvil identified Tiffany Graham, Eugene Strickland, Marshall Strickland and Mickey Strickland as all participating in crack cocaine deals in the summer of 1997. The first transaction he testified about being present for involved one-and-a-half kilograms of crack cocaine, which Tiffany Graham delivered to Eugene and Marshall Strickland, and

14

Mickey Strickland tested. This transaction alone surpasses the statutory requirement of 50 grams of crack cocaine required to support a life sentence.

Ron Miles, who only sold crack cocaine testified that he sold nine-ounce quantities of crack cocaine to Mickey Strickland numerous times, "sometimes twice a week, sometimes more.["] Miles also sold similar quantities to Eugene and Marshall Strickland. Miles testified that Emily Charity Chavis was present for one 33-gram deal, and in fact, gave him the money for the crack that she and Eugene Strickland purchased. Miles recounted selling quarter ounces of crack on one or two occasions to Mitchell Kelly Chavis. Miles also sold crack to Leon Strickland on one occasion.

Christina Scott identified Eugene Strickland, Marshall Strickland, Robert Neil Strickland ("Punch"), and Emily Charity Chavis as individuals who sold her crack cocaine over a number of years. Christina Scott purchased $80 to $100 quantities of crack cocaine "about everyday" behind "Mickey's trailer" from 1994 through 1997, from Eugene and Marshall Strickland, and "Punch" (Robert Strickland).

Brenda Barefoot testified that she purchased cocaine from Eugene, Marshall and Leon Strickland, "so many times over the last couple years that I was there, I can't remember." She also admitted purchasing crack cocaine from Robert "Punch" Strickland and Travis Strickland on "numerous occasions." Barefoot recalled purchasing a $20 piece of cocaine from Mitchell Kelly Strickland (Chavis) on one occasion.

Deputy Steve Lovin stopped Leon Strickland and James Dallas Jacobs in August, 1998, and observed Leon Strickland place a quantity of crack cocaine under the car in which he was seated.

At "Mickey's residence," James Dallas Jacobs purchased crack cocaine from "Marshall or Eugene or Leon . . . Travis and Punch and Kelly," and one or two times from Mickey

15

Strickland. James Dallas Jacobs sold crack cocaine at "Mickey's" that "Leon or Eugene or Marshall," provided to him.

James Dallas Jacobs testified that he met Tiffany Graham during the summer of 1997, when she tried to sell <u>four and one-half ounces of crack cocaine</u> to Eugene Strickland.

In early January, 1999, Ronnie Strickland, a cocaine user and seller, made three purchases of crack cocaine from the "Strickland boys" (Leon Strickland and James Dallas Jacobs sold the crack to them, after he contacted Eugene and Marshall Strickland regarding making his buys) in cooperation with the [Robeson County Sheriff's Department].

(Emphasis added). In short, the evidence establishing the threshold amounts of cocaine and crack cocaine for life imprisonment sentences was not only overwhelming, but also uncontested. We conclude, therefore, beyond a reasonable doubt, that had the quantities been submitted to the jury, the jury's verdict would have been the same.

In a similar vein, Marshall Strickland argues that the district court's findings pursuant to the Sentencing Guidelines to enhance his sentence violated the principles of <u>Jones</u> and <u>Apprendi</u>. During sentencing, the district court found that Marshall Strickland possessed a firearm during the commission of an offense and enhanced his base offense level two levels under U.S.S.G. § 2D1.1(b)(1). The court also found that Marshall was "an organizer, leader, manager, or supervisor" and enhanced his offense level another two levels. These enhancements increased Marshall Strickland's maximum punishment from 327 months imprisonment to life imprisonment, and his actual sentence of 400 months imprisonment was 73 months more than would have been permissible without the enhancements. But again, we have held that "the current practice of judicial factfinding under the [Sentencing] Guidelines is not subject to the <u>Apprendi</u> requirements -- at least so long as that factfinding does not enhance a defendant's sentence beyond the maximum term specified in the substantive statute." <u>Kinter</u>, 235 F.3d at 201. In this case, by reason of the analysis we have already made -- i.e., that Marshall Strickland was charged with conspiracy to traffic in more than 50 grams of crack

16

cocaine and that overwhelming evidence supported this charge --
Marshall's maximum statutory sentence was life imprisonment. See
21 U.S.C. § 841(b)(1)(A). Thus, the enhancement from 327 months
to 400 months was within the prescribed statutory maximum. See
Apprendi, 120 S. Ct. at 2362-63.

III

Leon Strickland contends that his consent to the search of his
mobile home at the time of his arrest was not voluntary and that there-
fore the guns and drugs seized during that search should have been
suppressed. Even though Leon Strickland agrees that he and his wife
voiced consent to a search of their home, he challenges the voluntari-
ness of the consent in the context of the circumstances. He states that
the essence of his argument was accurately captured by the district
court's summary:

> I think it's common sense if somebody comes into your
> home and there's six men or four men in your house at 6:30
> in the morning and you're handcuffed and they've got fire-
> arms and they say "Can I search your house?," I bet you 99
> out of 100 are going to say "yes sir."

Leon Strickland adds that when law enforcement officials received
their consent to search his residence, "they had already explicitly
shown the Strickland family that their authority extended to every part
of the Stricklands' persons and home. Clearly, any consent . . . was
simply an acquiescence to a claim of lawful authority." Nonetheless,
the district court found that Strickland's consent to the search was
voluntary and thus did not suppress the evidence.

Our review of Leon Strickland's claim, which is essentially a fac-
tual challenge, is for clear error. See Anderson v. Bessemer City, 470
U.S. 564, 573-74 (1985); United States v. Lattimore, 87 F.3d 647, 650
(4th Cir. 1996) (en banc).

The historical facts themselves are not disputed. When officers
sought, at approximately 6:30 a.m. on March 30, 1999, to arrest Leon
Strickland pursuant to an arrest warrant, they were unable to arouse

17

Strickland from his bed, despite their pounding on the front door and on the outside of Strickland's mobile home. After repeated efforts, the officers broke open the door and entered, one officer going to the right and handcuffing Leon Strickland's wife, Teresa, and the other going to the left and handcuffing Leon Strickland. After the two were brought from their bedrooms to the living room and seated, Leon was read his <u>Miranda</u> rights. Teresa was told that she was not under arrest and that cuffing her was for the safety of all present. One of the officers asked Leon whether he "ha[d] any weapons in the residence," whether there were "any guns in the residence." He pointed to the bedroom, and the officers recovered several firearms that were located in the closet and under the bed. The officers then asked Leon whether there were any more controlled substances (other than the marijuana that they had discovered on the counter when they entered the home), and Leon said no. When one officer asked,"Do you mind us looking?", Leon said that the officers could search the trailer. To assist, he provided them with the location of the key to the safe. Teresa also gave her consent to the search. During their search, the officers recovered cocaine.

On these facts, the district court found that the officers' entry into the trailer was legal, and that their initial protective sweep of the trailer to protect the safety of the officers was valid under <u>Maryland v. Buie</u>, 494 U.S. 325 (1990). The court also found that the seizure of marijuana located on the counter in plain view was legal. Finally, the court found that the more detailed search of the mobile home, during which cocaine was discovered, was conducted pursuant to the voluntary consent of both Leon Strickland and his wife. Leon challenges only the voluntariness of this consent in the context of the circumstances.

Other than the force required to effect his arrest, Leon can point to no fact of coercion that rendered his consent involuntary. The officers used force to enter, to make the arrest, and to secure the premises, including handcuffing Leon. The evidence indicates, however, that they accomplished their task in a most professional manner. For example, when they handcuffed Teresa, they advised her that she was not under arrest and that the handcuffs were "just procedural." They offered to permit Teresa to have someone pick up her child to avoid the emotional stress of the situation, an offer that Teresa accepted.

18

The officers also brought a blanket to Leon after he complained of being cold, as he was wearing only his underwear. Although these accommodations were not required, they evidence a situation in which will could be freely exercised. Indeed, neither Leon nor Teresa complained during the arrest and the subsequent searches about any overbearing conduct.

Accordingly, we conclude that the district court did not err in finding the consent given by Leon and Teresa Strickland to be voluntary.

IV

Marshall Strickland contends that the Double Jeopardy Clause bars his retrial in this case after his first trial ended in a mistrial. Pursuant to the first indictment in this case, which named only four defendants, the trial of Marshall Strickland alone commenced on February 1, 1999. At that trial, Marshall Strickland's theory was that he was serving as a government informant during the drug transactions at issue. Despite several requests that he made before trial for records of his activities as an informant, the government did not produce any. It also did not acknowledge that any existed until after a trial had begun and Strickland's counsel had already made representations to the jury that no such records existed. When a witness acknowledged their existence, Strickland moved for a mistrial, and the district court granted the motion. Strickland then filed a motion to dismiss the indictment against him on double jeopardy grounds, a motion that the district court denied.

On appeal, Marshall Strickland does not challenge the general principle that he cannot claim double jeopardy when he is given a second trial pursuant to his own motion. See United States v. Ham, 58 F.3d 78, 83 (4th Cir. 1995). Rather, he argues that the circumstances in this case fall within an exception to the general rule, as stated in Oregon v. Kennedy, 456 U.S. 667 (1982), which held that "[o]nly where the governmental conduct in question is intended to `goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded and aborting the first on his own motion." Id. at 676; see also United States v. Johnson, 55 F.3d 976, 978 (4th Cir. 1995). Our review of the record, however, reveals no evidence that the prosecutor's conduct was deliberate and

19

intended to provoke a mistrial. <u>See Kennedy</u>, 456 U.S. at 676 (emphasizing that the prosecutor must <u>intend</u> to provoke a mistrial). The district court was able to assess the prosecutor's demeanor when she offered her explanation for failing to provide the evidence, and the court made the factual finding that the prosecutor had not acted in bad faith, which we must accept unless such finding is clearly erroneous. <u>See Johnson</u>, 55 F.3d at 978. Moreover, as the government points out, whether the failure to disclose the evidence constituted a <u>Brady</u> violation was far from clear; it certainly was not egregious. The transcript reveals that the prosecutor herself was clearly surprised by her witness's reference to reports, and she promptly suggested having the matter clarified by further questioning of the witness. This evidence alone supports the district court's conclusion that the government did not act deliberately to goad the defendant by intentionally concealing discoverable materials.

Accordingly, we affirm the district court's rejection of Marshall Strickland's double jeopardy claim.

V

Mitchell Kelly Chavis and Robert "Punch" Strickland contend that the district court abused its discretion in denying their motions to sever their cases from those of the other defendants. They argue that the magnitude of the evidence against them was small in comparison to that against the others, and that the jury would have difficulty in distinguishing among the various defendants.

Generally, "individuals indicted together should be tried together." <u>United States v. Brugman</u>, 655 F.2d 540, 542 (4th Cir. 1981). And defendants may be charged with the same indictment if they are alleged to have "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). It is not an abuse of discretion, therefore, to follow this general rule of trying together those indicted together unless the moving defendant is able to show prejudice. <u>See</u> <u>United States v. Akinkoye</u>, 185 F.3d 192, 197 (4th Cir. 1999).

While the jury did hear a substantial amount of evidence directed specifically against other members of the conspiracy, there was ample

20

evidence, as we indicate below, directed specifically to Marshall Kelly Chavis and Robert "Punch" Strickland to support their individual convictions. And there is no evidence that the jury had difficulty distinguishing between the defendants. The district court instructed the jury to consider each defendant separately, and the prosecutor outlined separately the evidence against each defendant in closing argument. "A defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." Akinkoye, 185 F.3d at 197 (citation omitted).

In short, these defendants have simply not demonstrated the prejudice required to justify reversing the district court's ruling.

VI

Eugene Strickland, Tiffany Graham, Patricia McGirt, Mickey Strickland, Mitchell Kelly Chavis, Robert "Punch" Strickland, and Travis Strickland challenge the sufficiency of evidence of conspiracy upon which the jury's verdicts were based. Their arguments center principally around the contentions that (1) each defendant's connection with the conspiracy was too attenuated, and (2) rather than proving a single, unified conspiracy, the government actually proved multiple conspiracies.

To prove a conspiracy under 21 U.S.C. § 846, the government must prove (1) an agreement between two or more persons to engage in conduct that violates a federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) the defendant's knowing and voluntary participation in the conspiracy. See United States v. Wilson, 135 F.3d 291, 306 (4th Cir. 1998). When reviewing the evidence that resulted in a conviction, we take the evidence in the light most favorable to the government to determine whether the jury's verdict was supported by substantial evidence. See Glasser v. United States, 315 U.S. 60, 80 (1942). Once a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction. See United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992). Indeed, a defendant need not have knowledge of all his co-conspirators, or of all of the details of the conspiracy, and he may be convicted despite having played only

21

a minor role. <u>See United States v. Burgos</u>, 94 F.3d 849, 861 (4th Cir. 1996) (en banc).

Our review of the record reveals ample evidence to support the jury's convictions against these defendants. Witnesses identified Eugene Strickland and Marshall Strickland as the suppliers of those defendants who sold cocaine at "Deep Curve" on State Route 130 in Robeson County, at "Mickey's Place," and at Eugene Strickland's residence. The witnesses described open-air drug markets at these locations where customers could drive up, negotiate the purchase, and complete the transaction within minutes. Mickey Strickland, Mitchell Kelly Chavis, Robert "Punch" Strickland, and Travis Strickland were each identified by witnesses as cocaine sellers at these open-air drug markets. Tiffany Graham was identified by two witnesses as a cocaine supplier to Eugene and Marshall Strickland. Patricia McGirt's participation involved assisting other members in the conspiracy. She went with other conspirators to obtain drugs from Florida and told them that it was easy to do. She made her residence available to Eugene Strickland on more than one occasion to sell drugs. Indeed, evidence was also presented that McGirt herself had sold cocaine.

Eugene Strickland contends additionally that the government did not prove a single, unified conspiracy, but rather actually proved multiple conspiracies. <u>See generally United States v. Leavis</u>, 853 F.2d 215, 218 (4th Cir. 1988). "Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." <u>Id</u>. Eugene, however, has failed to demonstrate that the jury's finding of a single conspiracy was unreasonable or irrational. There was evidence that tied him to purchases of large quantities of cocaine and crack cocaine for the purposes of supplying street level drug dealing throughout the period of the conspiracy. The facts establish not only constancy of the locations of operation, but also of the methods used and most of the personnel involved. The evidence clearly supported a finding that Eugene Strickland was involved in a single, overall venture extending over a long period of time to deal in drugs. <u>Cf</u>. <u>United States v. Bowens</u>, 224 F.3d 302, 308 (4th Cir. 2000) (holding that it was not error for the district court to refuse to instruct the jury on multiple conspiracies where the evidence supported a single conspiracy).

22

## VII

Leon Strickland contends that the district court abused its discretion in admitting in evidence marijuana that was seized at his mobile home when he was arrested. He contends that he was not charged with distributing marijuana and that the marijuana was therefore both irrelevant and prejudicial and should have been excluded under Federal Rule of Evidence 403.

While the evidence of marijuana was not directly relevant to Leon's charges of cocaine dealing, it was seized from his mobile home when he was arrested, and certainly could have been considered, as are guns, as evidence to support his involvement generally in the "drug trade." Cf. United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999). If this were a case where the evidence of cocaine trafficking was marginal or doubtful, Leon Strickland's argument might have carried greater weight. But in the context of the overwhelming evidence that Leon Strickland dealt in large amounts of cocaine and crack cocaine over many years, there can be no doubt that the admission of evidence that Leon Strickland was also involved in a small amount of marijuana was not prejudicial.

## VIII

Emily Charity Chavis contends that her due process rights were violated by misstatements of the prosecutor. During closing argument, the prosecutor recited the evidence against each defendant, and when the evidence was summarized against her, the prosecutor stated that a witness had stated Chavis was selling cocaine from Eugene Strickland's trailer. The evidence referred to actually showed that Chavis was "around Eugene maybe when he was doing his deals" and that "most of the time Eugene maybe would give her his money."

The government contends that by taking the money from Eugene during the course of transactions, Chavis was participating in the sales. Additionally, the government points to the fact that evidence, other than that the testimony referenced by the prosecutor, indicated that Chavis sold cocaine at Eugene Strickland's trailer.

23

Chavis raised a timely objection, which the district court overruled. Accordingly, our review is for abuse of discretion.

If the prosecutor's statements were in fact misstatements, a point that is not certain, there is no indication that the remarks prejudiced Chavis. First, Chavis objected to the statements, highlighting her challenge before the jury and permitting the jury to consider the evidence that they heard. Second, there was plenty of evidence that Chavis sold cocaine generally. Third, the challenged statements were brief. And finally, there is no indication that the prosecutor was deliberately attempting to mischaracterize the evidence. Accordingly, we reject Chavis' challenge based on this alleged misconduct.

IX

Mickey Strickland contends that because he was a paid informant and confidential source of information during a portion of the conspiracy, he could not have been found guilty of conspiracy. Correspondingly, he also argues that the district court improperly denied him the public authority defense.

It is well settled, of course, that government agents participating in "sting" operations are not part of the conspiracy. See United States v. Hayes, 775 F.2d 1279, 1283 (4th Cir. 1985); see also Fed. R. Crim. P. 12.3. We have reviewed the record, however, and have found no evidence that Mickey Strickland was acting in such a capacity with regard to the transactions at issue in this case. Indeed, the evidence overwhelmingly showed the opposite -- that Mickey Strickland was an active, bona fide participant in the conspiracy.

We also reject Strickland's claim that the district court improperly precluded him from raising this theory as a defense to the conspiracy charge. We can find no indication that the district court prevented Strickland from eliciting testimony from witnesses about his cooperation. Indeed, the government itself affirmatively provided evidence of Strickland's cooperation to some degree. Moreover, the government contended that the evidence against Mickey Strickland was based exclusively upon dealing that occurred during a time when he was not cooperating. And we can find no indication in the record that Mickey Strickland attempted to argue to the jury and was denied the argument

24

that he cooperated during the course of the conspiracy. Indeed, two other defendants, Eugene Strickland and Marshall Strickland, claimed a public authority defense, on which the jury was instructed pursuant to their requests. Mickey Strickland requested no such instruction. While the court did decline to strike testimony offered by a witness about acts for which Strickland claims that he was immune, it did so only because Strickland failed to notice of his intent to raise the defense as required by Federal Rule of Criminal Procedure 12.3. The court certainly did not preclude Strickland from testifying on his own behalf or otherwise arguing the defense. See generally 1A Charles Alan Wright, Federal Practice and Procedure§ 210 (3d ed. 1999). We conclude that Strickland's arguments have no merit.

X

Tiffany Graham and Mitchell Kelly Chavis each challenge the findings of the district court on the amounts of drugs imputed to them for sentencing. We review these findings for clear error. See United States v. Sampson, 140 F.3d 585, 591 (4th Cir. 1998).

Under the Sentencing Guidelines, defendant's base offense level is determined by considering "all reasonably foreseeable acts and omissions of others in furtherance of the [conspiracy]." U.S.S.G. § 1B1.3(a)(1)(B). If Tiffany Graham and Mitchell Kelly Chavis' sentences were computed in this fashion, the amounts imputable to them would have been far greater. The presentence report, which the district judge accepted, held each accountable only for drugs that each of these defendants personally distributed: 14.38 kilograms of crack cocaine as to Tiffany Graham, and 6.237 kilograms of crack cocaine as to Mitchell Kelly Chavis.

A review of the record indicates that these calculations were conservative and amply supported. With respect to Tiffany Graham, Jacquelin Sainvil told investigators that she supplied Graham with a total of 14 kilograms of crack cocaine during the period from July through October 1997, and Sandra Grice estimated that she had been with Sainvil on 13 occasions when she supplied Graham with at least 1 kilogram of crack cocaine per occasion. Tyrone Whitehead admitted purchasing 13.5 ounces of crack cocaine from Graham between Janu-

25

ary and February 1997. On this evidence alone, the 14.38 kilograms calculation becomes a modest estimate.

Mitchell Kelly Chavis was involved in the conspiracy for the full 10-year period. There was specific evidence that Chavis distributed cocaine base supplied by Eugene Strickland, Marshall Strickland, and Leon Strickland on a daily basis at Mickey Strickland's mobile home for a period of approximately 220 weeks. Informants told investigators that a person selling from that location could sell as much as one ounce each day. For purposes of Chavis' calculation, the presentence report imputed only one ounce <u>each week</u>, or a total of 220 ounces (amounting to 6,237 grams). We conclude that this estimate is amply supported.

We have also reviewed these defendants' challenge to the sentencing enhancement for use of a firearm and find it without merit.

XI

For the reasons given, we affirm the convictions and the sentences of each of the ten defendants in this case.

<u>AFFIRMED</u>

MICHAEL, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the judgment and in all but part II of the majority opinion. The broad subject of part II is whether the defendants were improperly sentenced for the drug quantities involved. On that subject this case presents only the question of whether and under what circumstances it is plain error for the jury not to be instructed on drug quantity. On that question I agree that all of the elements of plain error have not been established. I write separately because this case does not present the much more difficult question of whether and under what circumstances it is plain error for the indictment not to include drug quantity. <u>Compare, e.g., United States v. Tran</u>, 234 F.3d 798, 809 (2d Cir. 2000) (holding that the failure to include an element of the offense in the indictment is a jurisdictional defect), <u>with United</u>

26

States v. Mojica-Baez, 229 F.3d 292, 310 (1st Cir. 2000) (holding that the failure to include an element of the offense in the indictment might not be plain error if there is sufficient evidence to establish the missing element). I do not join the majority's discussion of this question because, as the defendants ultimately concede, the indictment properly charged drug quantity. This case also does not present the question of whether drug quantity in 21 U.S.C. § 841(b) is an element of the offense or a sentencing factor. That question will be decided in our upcoming en banc decisions in United States v. Angle, 230 F.3d 113 (4th Cir. 2000), vacated and reh'g en banc granted (Jan. 17, 2001), and United States v. Promise, No. 99-4737, 2000 WL 774804 (4th Cir. June 16, 2000), vacated and reh'g en banc granted (Jan. 17, 2001). I recognize that the majority does not decide this second question, but at this point I respectfully decline to join any extended discussion or characterization of the question.

27