PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.                                                    No. 99-4537

JOHN CARRINGTON,
      *Defendant-Appellant.*

On Remand from the United States Supreme Court.
(S. Ct. No. 99-10250)

Argued: June 6, 2002

Decided: August 22, 2002

Before NIEMEYER, WILLIAMS, and KING, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge King joined. Judge Williams wrote a separate opinion concurring in part and concurring in the judgment.

---

## COUNSEL

**ARGUED:** Krysia Carmel Nelson, NELSON & KORTH, P.L.C., Charlottesville, Virginia, for Appellant. Ray B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Charlottesville, Virginia, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

Following his conviction for conspiracy to traffic in an unspecified amount of crack cocaine, in violation of 21 U.S.C. § 841(a), John Carrington was sentenced to 384 months imprisonment. We affirmed that conviction and sentence in April 2000. On Carrington's petition for a writ of certiorari and after the Supreme Court handed down *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court vacated our judgment in this case and remanded it for consideration in light of *Apprendi. Carrington v. United States*, 531 U.S. 1062 (2001).

Although we now conclude that it was plain error to have sentenced Carrington to 384 months imprisonment on an indictment that did not specify the drug quantity involved and absent any jury finding of drug quantity, we decline to note and correct the error because the evidence of the drug quantity necessary to justify the sentence imposed was overwhelming and essentially uncontroverted, and to reduce Carrington's sentence because of a technical error never objected to at trial would threaten the fairness, integrity, and public reputation of the judicial proceedings. Accordingly, we affirm.

I

John Carrington, along with ten co-conspirators, was charged in one count of a seven-count indictment with conspiracy "to possess with intent to distribute and to distribute a mixture or substance containing cocaine base [or] 'crack,' . . . in violation of [21 U.S.C. §§ 841(a)(1) and 846]." In describing six overt acts taken in furtherance of the conspiracy, the indictment alleged, among other things, that Antonio Smith, the ringleader of the conspiracy, recruited members of the conspiracy to go to New York to pick up crack cocaine for transport to the Charlottesville, Virginia area and that "each shipment [between New York and Charlottesville] was between one quarter-kilogram and one kilogram of crack cocaine." The indictment further alleged that "[i]t was part of the conspiracy that, when some of [Antonio Smith's] supply of crack cocaine and currency were stolen in a burglary of his residence, [Smith] recruited a party of his conspirators to track down and kill one of the suspected burglars,

Eugene Siler." In describing these overt acts, the indictment refers to Smith and "the conspirators" or Smith and "a party of conspirators," without naming the specific conspirators involved in each overt act.

At trial, the government presented evidence against Carrington to prove his involvement in two of the six overt acts charged in the indictment — one or two of the trips to New York to obtain crack cocaine and the hunting down of Eugene Siler for allegedly burglarizing Smith's apartment and stealing crack cocaine and currency.

With respect to the New York trips, the government offered the testimony of Shawn Mason, who testified that in 1997, Carrington went on one of the trips to New York. Carrington was not, however, aware of the group's destination when the trip began, and when he found out that the group was going to New York, he became upset and stated that he did not want to go. Nevertheless, Carrington remained with the group because they were too far into the drive to turn around and take him back to Charlottesville. Once they arrived in New York, the group acquired a hotel room for four hours. During that time, Mason and Smith left to acquire crack cocaine, while Carrington and a woman named Tameka remained in the room. When Mason and Smith returned with the drugs, they proceeded to package them inside a stereo speaker while Carrington stood by the door, not focusing his attention on what Mason and Smith were doing. According to Mason, however, Carrington could readily have seen what was going on if he had looked over at them. In addition to Mason's testimony, the government offered the testimony of Stanley Fitzgerald, a participant in the drug ring, who testified that Carrington told him that he took two trips to New York with Smith to purchase crack cocaine.

With respect to Carrington's participation in hunting down Eugene Siler for his theft of crack cocaine and money that belonged to Smith, the government offered the testimony of Roger Price, a Charlottesville drug dealer. According to Price, on November 15, 1997, Carrington joined a "posse" of men that Smith formed after learning that Siler and two others had broken into his home and stolen two ounces of crack cocaine and $2,000. Price testified that Carrington remained with Smith and his armed posse as they searched for and intimidated these men by yelling and displaying guns. Carrington himself admitted, in grand jury testimony, to being with Smith that night and look-

ing for the burglars. The evidence also showed that Siler was murdered during the early morning hours of the next day and that Carrington participated in the murder. Specifically, William Bailey, who met Carrington in a holding cell in Charlottesville, testified that Carrington told him that he shot a man three times in the face at a graveyard, and a detective who investigated Siler's death testified that the facts surrounding Siler's death matched the facts described in Carrington's admission to Bailey.

Carrington's defense attempted to establish that Carrington was not a part of the conspiracy and that any involvement he may have had with the members of the conspiracy was too minimal to show that he knowingly involved himself in the conspiracy. Nonetheless, the jury returned a verdict finding Carrington guilty of the charged conspiracy.

At sentencing, Carrington objected to the Presentence Report's attribution to him of 250 grams of crack cocaine, the minimum amount that the evidence showed was involved on each of the trips to New York. Carrington argued that this crack cocaine should not be attributed to him because he was not a knowing and willing participant in any trip to New York, but the district court overruled the objection. Carrington did not object to the two ounces (roughly 57 grams) of crack cocaine attributable to him through his involvement in hunting down Siler for stealing the cocaine. Because the minimum amount of crack cocaine attributed to Carrington exceeded 50 grams and Carrington qualified as a career offender under the Sentencing Guidelines, the applicable sentencing range was 360 months to life (based on an offense level of 37 and a criminal history category of VI). The district court sentenced Carrington to 384 months imprisonment.

Carrington appealed his judgment of conviction to this court, arguing, among other things, that the government's evidence was insufficient to prove his participation in the conspiracy because there was no proof of an agreement between Carrington and any other member of the conspiracy. He also argued that the district court erred by permitting the government to refer to the murder of Eugene Siler and by allowing the introduction of Carrington's grand jury testimony as part of the government's case in chief. Finally, Carrington challenged his sentence, arguing that the district court erred in connecting him to the

250 grams of crack cocaine purchased on the trip to New York. In an unpublished per curiam opinion, dated April 21, 2000, we affirmed Carrington's conviction and sentence. *United States v. Martin*, Nos. 99-4471, 99-4537, 2000 WL 429715 (4th Cir. Apr. 21, 2000).

After Carrington filed a petition for a writ of certiorari in the Supreme Court, the Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (June 26, 2000). Based on its *Apprendi* decision, the Court then vacated our judgment in this case and remanded the case for further consideration in light of *Apprendi*. *Carrington v. United States*, 531 U.S. 1062 (2001). In our further consideration of the case on remand, we ordered supplemental briefing and oral argument.

## II

Carrington contends that "the facts in the indictment and found by the jury supported a maximum penalty of 20 years imprisonment" under 21 U.S.C. § 841(b)(1)(C), not the 32 years to which he was sentenced, and therefore that we "must notice and correct this error" and remand the case for resentencing "for a sentence not to exceed 20 years imprisonment." More expansively, he notes that neither the indictment "nor any other document provided [him] any pretrial notice that the government sought to hold him accountable for any particular drug quantity." He states that the overt acts charged in the indictment, several of which refer to drug quantities, do not mention him by name. In short, he argues that "a 'fair construction' of the terms of the indictment, even when coupled with the overt acts described therein, did not present the 'necessary facts' to state an aggravated drug offense *as against Appellant*." Carrington also notes that he disputed any finding "that he should be held accountable for *any* quantity of crack" and that "*[h]ad the jury been given the chance*, it may not have made the necessary finding to support [his] 32 year sentence." But, he asserts, the jury "neither considered the question of drug quantity nor made any finding beyond a reasonable doubt that Appellant conspired to distribute any specific quantity of crack," and in the absence of a quantity finding by the jury, the maximum to which he could be sentenced under 21 U.S.C. § 841(b)(1)(C) was 20 years imprisonment.

Carrington did not object to these errors at trial and therefore his claims of error were forfeited. Similarly, he did not assert these

claims of error to us during his first appeal. The Supreme Court's decision in *Apprendi v. New Jersey* was decided a few months after we decided Carrington's first appeal, and the Supreme Court remanded this case for consideration in light of its decision in that case. Accordingly, we now review Carrington's forfeited claims of error under the plain-error test established by Federal Rule of Criminal Procedure 52(b). The articulation of the test for plain-error review is well known:

> "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting [*United States v.*] *Olano*, [507 U.S. 725,] 732, 113 S. Ct. 1770 [(1993)]). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." 520 U.S., at 467, 117 S. Ct. 1544 (internal quotation marks omitted) (quoting *Olano*, *supra*, at 732, 113 S. Ct. 1770).

*United States v. Cotton*, 122 S. Ct. 1781, 1785 (2002).

Under this plain error test, Carrington asks us to review two trial errors: (1) that the indictment failed to charge the elements of an aggravated drug offense, having omitted allegations of specific drug quantities, and (2) that the quantity of drugs supporting his 384-month sentence in this case was decided by the judge during sentencing, not by the jury during trial. We address these issues in turn.

A

The second superseding indictment charged Carrington with conspiracy "to possess with intent to distribute and to distribute a mixture or substance containing cocaine base," in violation of 21 U.S.C. §§ 841(a)(1) and 846. Of the six alleged overt acts, the government offered evidence against Carrington with respect to two. The first overt act on which evidence was offered against Carrington described trips to New York taken by Antonio Smith and his "confederates,"

without naming Carrington or any other confederate or conspirator, to procure crack cocaine to bring back to Charlottesville, Virginia, and specifically stated that "each shipment was between one quarter-kilogram and one kilogram of crack cocaine." The other overt act on which evidence was offered against Carrington described how Antonio Smith and "a party of his conspirators" tracked down and killed a suspected burglar, Eugene Siler, who had stolen two ounces of crack cocaine and money from Smith. Again Carrington was not specifically named as a member of the "party of [Smith's] conspirators."

Carrington argues that he was not charged with conspiracy to distribute a specific quantity of cocaine because not all of the overt acts referenced the distribution of a particular amount of crack cocaine and the jury could have found a violation without finding that all overt acts were committed. Also, the charging language itself alleges a conspiracy to possess with intent to distribute and to distribute an *unspecified amount* of cocaine base.

We agree with Carrington that the government's failure, when charging an aggravated drug offense under 21 U.S.C. § 841, to allege drug quantity was an error and that the error was plain. *See Cotton*, 122 U.S. at 1783 (noting that drug quantity must be charged in the indictment); *id.* at 1785-86 (deciding the plain error question on the assumption that the failure to allege drug quantity was plain error); *see also United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (holding that "*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggregated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond a reasonable doubt" (internal footnote omitted)).

But we conclude that in this case, the error of failing to allege drug quantity in charging an aggravated drug offense did not affect Carrington's substantial rights. Through the indictment, Carrington had the right (1) to be notified of the charges against him by a description of each element of the offense, and (2) to be provided an accurate record of the charges against him so that he could plead an acquittal or conviction on the charges as a bar to a subsequent effort to prosecute him for the same offense. *Russell v. United States*, 369 U.S. 749,

763-64 (1962); *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999); *United States v. Smith*, 44 F.3d 1259, 1263-64 (4th Cir. 1995).

   In this case, even though the indictment erroneously failed, when purporting to charge an aggravated drug offense, to allege a specific drug quantity, charging simply that Carrington conspired to possess with intent to distribute and to distribute an unspecified amount of crack cocaine, the description of the overt acts taken in furtherance of the conspiracy did specify drug quantity. In particular, the indictment described as an overt act the conspirators' trips to New York to purchase crack cocaine and alleged that "each shipment was between one quarter-kilogram and one kilogram of crack cocaine." Even though the indictment described six overt acts carried out in furtherance of the conspiracy, and the government chose to offer evidence of only two overt acts against Carrington, he was put on notice of all six. More importantly, he was put on notice that over 250 grams of crack cocaine were involved, subjecting him to the risk of conviction for an aggravated drug offense. Carrington thus was given legally sufficient notice of the aggravated drug charges that he faced, including the level of drug quantities for which he might be found responsible as a co-conspirator. Unlike the indictment considered by the Supreme Court in *Cotton*, in which no drug quantity was alleged anywhere in the indictment, *see* 122 S. Ct. at 1786, the indictment here, while not satisfying the requirement of alleging drug quantity in the charging language, still fulfilled the notice purpose of an indictment through its description of the overt acts.

   The indictment in this case also provided Carrington with a record of the charges with sufficient detail that an acquittal or conviction on it could effectively be pleaded as a bar to a subsequent effort to prosecute him for the same offense. Not only did it provide a specific time frame of the conspiracy, it also alleged specific sets of events in furtherance of it. This indictment, therefore, protects Carrington from any future attempts to prosecute him for the same conduct, regardless of drug quantity.

   Accordingly, the protections provided by an indictment were not compromised by this indictment's failure when charging an aggravated drug offense to include a specific drug amount in the charging language. Whether, however, this failure to charge a drug quantity

could lead to an error relating to the issues presented to the jury is another question that we now address.

B

For his second claim of error, Carrington contends that he should not have been sentenced for an aggravated drug crime when the jury did not make a finding as to drug quantity. The basis for his claim is the Supreme Court's decision in *Apprendi*. In that case, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Thus, if a defendant is to be sentenced under the aggravated penalties of 21 U.S.C. § 841(b) for trafficking in specified quantities of drugs, the drug quantity, in addition to being alleged in the indictment, must be submitted to the jury and proved beyond a reasonable doubt. *Id.* at 491; *see also Cotton*, 122 S. Ct. at 1783 (applying *Apprendi* in a drug conspiracy case); *Promise*, 255 F.3d at 156-57 (requiring "specific threshold drug quantities [to] be treated as elements of aggravated drug trafficking offenses, rather than as mere sentencing factors").

In *Cotton*, a drug-trafficking case in which the defendants asserted an *Apprendi* error for the first time on appeal, the Supreme Court applied the plain-error review test and concluded that the error of not submitting drug quantity to the jury did not seriously affect the "fairness, integrity, or public reputation of judicial proceedings" because "[t]he evidence that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted.'" 122 S. Ct. at 1786; *accord United States v. Strickland*, 245 F.3d 368, 381 (4th Cir. 2001) (declining to correct an *Apprendi* error on plain error review because "the evidence establishing the threshold amounts of cocaine and crack cocaine for life imprisonment sentences was not only overwhelming, but also uncontested"). Based on the extensive evidence regarding drug quantity presented at trial, the *Cotton* Court concluded that "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." 122 S. Ct. at 1786. Indeed, the Court observed that "[t]he real threat . . . to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents,

despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id.* at 1787.

Similarly, in this case, we must determine whether the evidence with respect to drug quantity was so "overwhelming" and "essentially uncontroverted" that the ideals of the justice system would be advanced by exercising our discretion not to note and correct the error, or whether the quality of the evidence is such that we cannot be confident that the grand jury or petit jury would have made the necessary finding with respect to drug quantity if they had been asked to do so. To reach this question, we may assume, as did the Court in *Cotton*, that plain error has been demonstrated and that it has affected Carrington's substantial rights, thus directing our focus on the fourth prong of plain-error review, whether the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 122 S. Ct. at 1786 (internal quotation marks, modifications, and citation omitted). It is this question to which we now turn.

We begin with the fact that the jury convicted Carrington of conspiracy to traffic in crack cocaine, and, therefore, he became liable not only for his individual conduct in furtherance of the conspiracy but also for the conduct of co-conspirators that could be reasonably foreseen as a necessary part of the conspiracy or a natural consequence of it. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946). "The *Pinkerton* doctrine imposes vicarious liability on a coconspirator for the substantive offenses committed by other members of the conspiracy when the offenses are during and in furtherance of the conspiracy." *United States v. Aramony*, 88 F.3d 1369, 1379 (4th Cir. 1996).

On his first appeal, Carrington argued that he was innocent of the crime of conspiracy because he did not enter into an agreement with any member of the conspiracy or knowingly or voluntarily participate in the conspiracy. After reviewing the evidence, we concluded that the evidence was sufficient to permit the jury to find that Carrington knew about the conspiracy and knowingly and voluntarily participated in it. *United States v. Martin*, No. 99-4471, 2000 WL 429715, at *2 (4th Cir. Apr. 21, 2000). Even though the Supreme Court vacated our judgment and remanded the case, it did so "for further

consideration in light of *Apprendi*." *Carrington*, 531 U.S. at 1062. Therefore, we will not revisit our earlier conclusion that Carrington was properly found guilty of the conspiracy as charged.

Because the jury found Carrington guilty of conspiracy, it also found him guilty of his co-conspirators' acts performed during and in furtherance of the conspiracy so long as they could be foreseen or were a natural consequence of the conspiracy. *See Pinkerton*, 328 U.S. at 647; *Aramony*, 88 F.3d at 1379. Thus, in determining whether the evidence of drug quantity was "overwhelming," all evidence satisfying the *Pinkerton* criteria may be imputed to Carrington. But in this case, we need not look so broadly because the evidence presented to the jury with respect to Carrington's own participation in the conspiracy overwhelmingly demonstrated that the conspiracy involved the distribution of more than 50 grams of crack cocaine.

The government proved two events involving Carrington, each of which involved quantities of crack cocaine in excess of 50 grams. First, it showed that Carrington participated in a trip to New York to purchase drugs and that on each trip to New York the conspirators purchased "between one quarter-kilogram and one kilogram of crack cocaine." There was no evidence at trial suggesting that the quantities of one quarter-kilogram to one kilogram of crack cocaine were erroneous or overstated. Thus, the evidence strongly showed that based on one trip alone, the conspiracy involved at least five times the amount necessary to support a conviction for an aggravated drug offense.

In addition to this evidence, the government presented evidence showing that Carrington joined a group of people who hunted down and allegedly killed Eugene Siler because he broke into Antonio Smith's home and stole two ounces (roughly 57 grams) of crack cocaine and $2,000. With respect to this incident, Carrington admits that he was with Smith that night and participated in looking for the burglars. Again, there was no evidence to suggest that the 57-gram amount was erroneous or overstated. In fact, instead of controverting the amounts of cocaine involved in the conspiracy, Carrington's defense at trial focused on showing that he did not participate in the conspiratorial events.

In short, at the trial before the jury the evidence *of drug quantity* attributable to the conspiracy was both overwhelming and essentially uncontroverted. Indeed, since the evidence of Carrington's involvement in the conspiracy related only to the trip to New York and the hunt for Siler, in order to convict Carrington, the jury must in fact have found that Carrington participated in at least one of these events and therefore had to find that he was involved personally in acts relating to over 50 grams of crack cocaine.

Of course, at the time of trial, the *Apprendi* decision had not yet been decided, and we can assume that Carrington would properly have then reserved any contest over drug quantities for the sentencing phase, as was the universal practice. And indeed, Carrington did nominally contest drug quantity at sentencing, stating that he was objecting to the quantity of drugs imputed to him in the Presentence Report. But Carrington's objection focused only on the fact of imputation, not the quantity. He argued that the evidence did not establish that he was a member of the conspiracy, that he made the trip to New York in furtherance of the conspiracy, that he participated in the trip willingly, and that he did not, by his conduct during the trip, withdraw from the conspiracy. But none of these arguments relates to drug quantity. Moreover, Carrington never contested the amount attributable to him with respect to the hunt for Siler. In sum, while Carrington made the question of conspiratorial participation a controverted issue — one that the jury resolved against him — he never controverted drug quantity, either at trial or during sentencing.

Thus, we conclude that the *Apprendi* error claimed by Carrington "did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings" because the evidence that the conspiracy — indeed Carrington's personal involvement in the conspiracy — involved at least 50 grams of cocaine base was "overwhelming" and "essentially uncontroverted." *Cotton*, 122 S. Ct. at 1786. "Surely the . . . jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." *Cotton*, 122 S. Ct. at 1786; *see also Strickland*, 245 F.3d at 379 (holding that on plain error review, the "defendants must . . . demonstrate that the jury would not have found, beyond a reasonable doubt, that the defendants conspired to traffic in at least . . . 50 grams of crack"). Indeed, we note, as did the Court in *Cotton*, that the only real affront

to the judicial process would occur if Carrington, despite the strong evidence of drug quantity presented at trial, were to receive a sentence for a lesser crime than the one he committed. *Cotton*, 122 S. Ct. at 1787.

For the reasons given in our opinion on the first appeal, No. 99-4537, and given in this opinion, we affirm the judgment of the district court.

*AFFIRMED*

WILLIAMS, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the judgment, and in the majority opinion except insofar as it suggests that the error in this case pertained to the indictment. Because the indictment in this case properly charged a non-aggravated drug offense, the error pertains to the relationship between Carrington's sentence and the indictment.