Panel rehearing granted by order
filed 9/4/03

UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.                                    No. 99-4657

STEVEN FOWLER,
  *Defendant-Appellant.*

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.                                    No. 99-4697

ANTHONY SAMUELS,
  *Defendant-Appellant.*

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.                                    No. 99-4706

TIMOTHY TABOR,
  *Defendant-Appellant.*

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CR-99-10)

Submitted: December 10, 2002

Decided: January 14, 2003

Before WIDENER, NIEMEYER, and WILLIAMS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Bryan Emery Gates, Jr., Winston-Salem, North Carolina; Thomas Franklin Loflin, III, LOFLIN & LOFLIN, Durham, North Carolina; Paul K. Sun, Jr., SMITH, HELMS, MULLIS, & MOORE, L.L.P., Raleigh, North Carolina, for Appellants. Sandra Jane Hairston, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Steven Fowler, Anthony Samuels, and Timothy Tabor were indicted on one count of conspiracy to distribute in excess of fifty grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (2000). The conspiracy lasted from approximately June 1996 until January 1999. Following their convictions, Fowler received a life sentence; Samuels and Tabor each received a 360-month sentence. They now appeal. We affirm.

I

At trial, Clifton Lewis Belcher testified that by October 1996 he and Fowler were traveling at least weekly from Durham, North Carolina to New York City to purchase crack cocaine.[1] Belcher stated that they never returned to Durham with less than one-half kilogram of

---

[1] The frequency of the trips slowed in December 1996 but resumed in January 1997.

crack. By April 1997, Samuels was giving Fowler and Belcher money to purchase at least 125 grams of crack for him on the New York trips. In mid-1997, Fowler and Belcher began returning to Durham with powder cocaine, which they then cooked into crack and distributed. Samuels and Tabor showed them how to convert powder cocaine into crack. Additionally, Tabor was a crack dealer; his supplier often was Fowler.

Fowler and Belcher eventually decided that it was unwise for them to travel together to New York to purchase cocaine powder. William Davis subsequently accompanied Belcher on some of Belcher's trips north. Davis testified that on five trips in 1998, he and Belcher returned to Durham with a total of eleven kilograms of cocaine powder.

## II

Fowler argues that the court improperly admitted a taped telephone conversation among Belcher, Fowler's girlfriend, and Fowler. At the time of the conversation, Belcher was cooperating with the police. Fowler's statements on the tape were admissions by a party-opponent. They were offered against Fowler and were his own statements. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Price*, 13 F.3d 711, 720 (3rd Cir. 1994); *United States v. Hernandez*, 829 F.2d 988, 994 (10th Cir. 1987). Fowler argues that the statements of Belcher should not have been admitted into evidence under the co-conspirator exception to hearsay because Belcher was cooperating with the Government, and thus, the statements were not made "by a coconspirator of a party during the course and in furtherance of the conspiracy," Fed. R. Evid. 801(d)(2)(E). Although Fowler is correct in asserting that Belcher was no longer a member of the conspiracy, *see United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967), he is incorrect in characterizing the statements as hearsay. The statements were not being offered to prove the truth of the matters asserted, but were only proffered to set the context for Fowler's responses. Accordingly, the statements of Belcher and Fowler's girlfriend were properly admitted as "reciprocal and integrated utterance(s)," *United States v. Metcalf*, 430 F.2d 1197, 1199 (8th Cir. 1970), to put Fowler's statements into perspective and make them "intelligible to the jury and recognizable as admissions," *United States v. Lemonakis*, 485 F.2d 941, 948 (D.C. Cir. 1973). *See*

3

*United States v. McDowell*, 918 F.2d 1004, 1007 (1st Cir. 1990); *United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir. 1988); *cf. United States v. Leake*, 642 F.2d 715, 720 n.6 (4th Cir. 1981) (admitting testimony regarding conversation that was "necessary to explain the context in which [the defendant] made the statements"). Admission of the tape was not an abuse of discretion.

### III

Samuels' offense level was enhanced for firearm possession. *See U.S. Sentencing Guidelines Manual* § 2D1.1(b)(1) (1998). There was evidence that Belcher carried, used, and possessed a firearm in furtherance of the conspiracy. Indeed, Belcher freely admitted that he was "the right hand man" for Fowler and Samuels, and that customers knew he would shoot them if they did not pay for the drugs they bought. Belcher's possession of a firearm was attributable to his coconspirator, Samuels. USSG § 1B1.3(a)(1)(B); *United States v. Hunter*, 19 F.3d 895, 896 (4th Cir. 1994). Enhancement of Samuels' sentence under USSG § 2D1.1(b)(1) was not clearly erroneous.

### IV

During sentencing, the district court found each defendant accountable for at least 1.5 kilograms of crack. Fowler, Samuels, and Tabor contend that the district court should not have held them responsible for more than the fifty grams of crack with which the indictment charged them and for which the jury found them guilty; they contend that the jury, rather than the court, should have calculated the amount of crack attributable to them for sentencing purposes. The Supreme Court has held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). We discern no violation of *Apprendi* in this case.

The three defendants were charged with conspiracy to distribute in excess of fifty grams of crack cocaine. The statutory maximum sentence for this offense is life in prison. 21 U.S.C. § 841(b)(1)(A). "[T]he Supreme Court, in both *Apprendi* and its precursor, *Jones v. United States*, 526 U.S. 227 . . . (1999), explained that there is no con-

4

stitutional infirmity in a trial court's use of facts proven only by a preponderance of the evidence when exercising the wide discretion to `impos[e] a judgment *within the range* prescribed by statute.'" *United States v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000). Here, the district court found by a preponderance of the evidence that each defendant was accountable for at least 1.5 kilograms of crack, a finding fully supported by the evidence.[2] The district court did not contravene the rule of *Apprendi* because none of the defendants received a sentence beyond the maximum term specified in § 841(b)(1)(A).

V

We grant defendants' motions to file pro se supplemental briefs. We have considered the issues raised in those briefs and find them to be without merit. We affirm the convictions and sentences. We deny Fowler's motion to compel a reply and his motion to be personally served with all information. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*

---

[2] The claim that the district court made no findings as to the amount or type of drugs involved in the conspiracy is belied by the record.

Both Tabor and Samuels argue that there was no evidence that they were accountable for at least 1.5 kilograms of crack. The evidence in fact supports a finding that they were responsible for far more than that amount. Davis' testimony that in 1998 he and Belcher returned to Durham with a total of eleven kilograms of powder cocaine is alone sufficient to find Tabor and Samuels responsible for 1.5 kilograms of crack. We note that neither Tabor nor Samuels disagrees that one gram of cocaine powder converts to .89 grams of crack. Further, the amount of crack—well in excess of 1.5 kilograms—to which eleven kilograms of powder cocaine converts is attributable to all members of the conspiracy. *See United States v. Carrington*, 301 F.3d 204, 211 (4th Cir. 2002).

5