**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4336**

_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

ERIC GILES,

              Defendant - Appellant.

_____

**No. 12-4403**

_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

KYLE MARK CORSI,

              Defendant - Appellant.

_____

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:09-cr-00203-RJC-DCK-1; 3:09-cr-00203-RJC-DCK-5)

_____

Argued: March 21, 2013           Decided: April 12, 2013

_____

Before MOTZ and DUNCAN, Circuit Judges, and Robert E. PAYNE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** Carol Ann Bauer, Morganton, North Carolina; William David Auman, AUMAN LAW OFFICES, Asheville, North Carolina, for Appellants. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Eric Giles and Kyle Corsi appeal from conspiracy convictions involving drug trafficking, money laundering, and money structuring.  Finding no error, we affirm.


I.

A.

Giles and Corsi were members of a marijuana distribution ring operating in Chapel Hill and Charlotte, North Carolina.  As the ring-leader, Giles would travel to California to procure "high-grade" marijuana.  Giles would then send packages containing several pounds of marijuana through the mail from a fictitious business -- Norcal Athletics -- to Corsi and other distributors back in North Carolina.  When a package arrived, Giles would send a text message that "the eagle has landed" to notify a given distributor that the package was ready for pickup and distribution.  To finance the purchases, the distributors made large cash deposits into bank accounts that Giles managed.  However, pursuant to Giles' instructions, the distributors kept their individual deposits under $10,000 to avoid federal reporting requirements.  Over its three years of operation, the distribution ring sold over one hundred kilograms of marijuana and made deposits totaling several hundred thousands of dollars.

3

On October 26, 2009, after over a year tracking the operation and intercepting packages containing marijuana en route from "Norcal Athletics" to North Carolina, federal agents arrested Giles in Charlotte. With Giles' consent, agents searched his vehicle and confiscated his cellular phone and approximately one pound of marijuana. At that time, Giles identified his source of marijuana in California, but stated that any packages sent by Norcal Athletics contained only athletic gear, and denied knowledge of the contents of the package of marijuana seized from his car. That same day, agents searched Giles' residence, and discovered receipts and other documentation linking him to shipments from California to North Carolina.

On the evening of Giles' arrest, six federal agents and two uniformed police officers went to Corsi's residence to attempt to speak with him about the marijuana distribution ring. After Agent Christopher Morgan and a uniformed officer knocked on the door to Corsi's residence, Corsi stepped out onto his porch. His roommate, Angelica Grist, followed him out shortly thereafter. When Grist exited the residence, Agent Morgan detected the smell of burnt marijuana coming from inside. Agent Morgan informed Corsi that the officers had information that there might be narcotics in the residence, and hoped to talk

with him and obtain his consent for a search. Corsi became agitated and denied the officers consent to enter the house.

Concluding that Corsi would not talk or provide consent for a search, Agent Morgan began speaking to Grist. Over Corsi's objections, Grist consented to a search of just her room. Grist led Agent Morgan and another officer to her room on the second floor. During the search, Agent Thomas Nelson and two other officers restricted Corsi's movement to a small area just inside the front door. After several minutes, Corsi shouted upstairs that he knew why the officers were there and that he was ready to talk and "be a man about it."

Corsi led Agents Morgan and Nelson to his kitchen. Once the interview began, Corsi, now calm, admitted that he had been receiving high-grade marijuana from California through the mail. He explained that his supplier would send text messages indicating when the packages had arrived in North Carolina and were ready for pickup. Corsi also explained that other members of the ring would deposit money into the drug supplier's bank account to prepay for the marijuana, but stated that he had never done so. However, after Agent Morgan showed Corsi bank surveillance photographs of him and an unidentified woman (who Corsi then identified as his girlfriend) making cash deposits, Corsi admitted to making several deposits into the drug supplier's account. After approximately thirty minutes, the

5

agents concluded the interview and left the residence without arresting Corsi.

A week later, on November 3, several agents and officers returned and arrested Corsi at his residence. Upon his arrest, an agent read Corsi his <u>Miranda</u> rights. Corsi indicated that he understood his rights, and an officer transported Corsi to the courthouse for his initial appearance. Before taking Corsi into the courthouse, the officer took Corsi to meet Agent Morgan in the courthouse parking lot. Agent Morgan ascertained from the officer that Corsi had been informed of his <u>Miranda</u> rights, and then asked Corsi several clarifying questions regarding his October 26 statements. Corsi confirmed several statements from his earlier interview, including that packages he received from Norcal Athletics had contained marijuana. Agent Morgan terminated the interview when Corsi indicated he needed to use the restroom. At no point during the interview did Corsi invoke his right to remain silent or his right to an attorney.

## B.

On June 16, 2010, a grand jury returned a third superseding indictment charging Giles and Corsi with conspiracy to possess with intent to distribute marijuana, conspiracy to commit money laundering, and conspiracy to structure a currency transaction for the purpose of evading reporting requirements. The grand

6

jury also charged Giles with an additional count of conspiracy with intent to distribute marijuana, and four firearms offenses.

Prior to trial, Corsi moved to suppress the statements he had made to Agents Morgan and Nelson at his residence on October 26, and the statements he had made to Agent Morgan following his arrest on November 3. At an evidentiary hearing on the motion, Corsi orally moved for a continuance to procure the testimony of Grist, his roommate who was present on October 26. Corsi's counsel stated that despite her efforts, and Grist's promises to meet her, she had been unable to serve Grist with a subpoena to testify. The court indicated its intent to deny the motion, concluding that Corsi had had "plenty of time" to subpoena Grist; however, the court left "the decision of the Court open until the end of jury selection," providing Corsi three additional days to locate Grist. Grist never appeared to testify.

During the suppression hearing, Agents Morgan and Nelson and another officer testified as to the events leading up to and including Corsi's October 26 interview. They testified that they neither arrested Corsi nor told him he was under arrest; that they neither drew nor threatened to draw a weapon on Corsi; and that they only restricted Corsi's movement to ensure that he did not destroy evidence during their search of Grist's room. The officers also testified that Corsi volunteered for the

7

interview during the search of Grist's room; that Corsi chose the kitchen as a location for the interview; that they instructed Corsi that he was not under arrest and could refuse to answer questions at any time; and that Corsi, though agitated earlier, remained calm throughout the thirty-minute interview.

Corsi testified that the officers had forcefully pulled him down from the stairs outside of his residence and refused to allow him to return inside; that he had requested an attorney "four or five" times but was told he would not be permitted to contact his lawyer; and that he several times asked the officers to leave his residence. Corsi stated that the officers intimidated Grist by threatening her with charges for anything found in the house. Corsi further testified that when Grist led the officers inside to her room, he tried to follow, but officers flanked him with their hands going toward their weapons and again denied his request for an attorney. Corsi maintained that, after he agreed to speak with the officers, he again requested, and was denied, an attorney, and that while at the kitchen table, one of the agents stated that if he did not answer their questions, both he and his girlfriend would be charged based on the bank surveillance photographs. Corsi concluded that during the interview he felt constrained "[t]he whole time" and "was not free to leave."

Regarding his post-arrest November 3 interview, Corsi admitted that the arresting agent had read him his Miranda rights. Corsi testified that "three or four" times officers denied his request for counsel, but could not recall whether he ever requested counsel in Agent Morgan's presence or during the interview.

After considering all of the testimony, the court credited the officers' and found Corsi's not credible. On that basis, the court held that Corsi was not in custody when he made statements during the October 26 interview, and that Corsi voluntarily waived his Miranda rights during his November 3 post-arrest interview. As such, the court denied Corsi's motion to suppress the Government's planned testimony from Agents Morgan and Nelson as to Corsi's statements on October 26 and November 3.

Over Corsi's motion to sever, Giles and Corsi were then tried together before a jury. At trial, both Giles and Corsi objected to the Government's introduction of text messages extracted from Giles' cellular phone seized during his arrest. The court overruled the defendants' general objection, but ultimately admitted only those messages that the Government could tie to co-conspirators through testimony. In addition to testimony of investigating officers as to the text messages, the packages confiscated, the money laundering and reporting evasion

9

scheme, and Corsi's October 26 and November 3 statements, the Government also produced the testimony of several customers and unindicted co-conspirators of the distribution ring.

After the close of evidence, both Giles and Corsi moved for acquittal. The district court denied the motions, and the jury returned a unanimous verdict, acquitting Giles of one firearms charge, and convicting both defendants of the remaining charges against them.

The court sentenced Corsi to the statutory minimum 120-months' imprisonment; it sentenced Giles to 196-months' imprisonment. These consolidated appeals followed.


II.

Giles and Corsi present one joint, and several individual, challenges to their convictions. We consider their joint challenge first, and then the individual challenges.

A.

Both Giles and Corsi appeal the district court's admission of text messages obtained from Giles' cellular phone. We review the district court's decision to admit the text messages for abuse of discretion. United States v. Ayala, 601 F.3d 256, 267 (4th Cir. 2010).

Giles and Corsi argue that the court erred by admitting the messages as party admissions under Fed. R. Evid. 801(d)(2)(A),

when they should have been considered as statements between co-conspirators under Fed. R. Evid. 801(d)(2)(E). Contrary to their argument, however, the district court in fact did admit the text messages as statements between co-conspirators. See Joint Appendix 852-53, 909. Further, considering the defendants' failure on appeal to demonstrate that any of the admitted text messages were not sent "in the course and in furtherance of the conspiracy," Bourjaily v. United States, 483 U.S. 171, 183 (1987), we cannot say that the district court abused its discretion by admitting the text messages.[1]

### B.

Corsi raises five additional issues on appeal.

First, he appeals the denial of his motion to continue his suppression hearing so that his counsel could subpoena Grist. We review a denial of a motion for continuance for abuse of discretion, and reverse only if any such abuse specifically prejudiced the defendant. United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005). A party seeking a continuance to

---

[1] At oral argument, Giles' counsel raised the unbriefed argument that the district court used the wrong evidentiary standard when determining whether a conspiracy existed at the time the text messages at issue were sent. Even if Giles had preserved this argument and the district court had failed to apply the preponderance of the evidence standard for admissibility, see Bourjaily, 483 U.S. at 175, Giles fails to demonstrate that the record does not contain sufficient evidence of a conspiracy under that standard.

11

secure the attendance of a witness must demonstrate (1) who the witness is, (2) what his or her testimony will be, (3) that the testimony will be relevant to the case and competent, (4) "that the witness can probably be obtained if the continuance is granted," and (5) that counsel has exercised due diligence to obtain the witness's attendance for the trial as set. United States v. Clinger, 681 F.2d 221, 223 (4th Cir. 1982). In this case, Grist's testimony might well have been relevant. However, Corsi failed to demonstrate the character and content of Grist's testimony, or that her presence would probably have been obtained were the continuance granted. For these reasons, the court did not abuse its discretion in denying Corsi's motion to continue.

Corsi next challenges the district court's denial of his motion to suppress the testimony of Agents Morgan and Nelson as to his October 26 and November 3 statements. "We review the factual findings underlying a motion to suppress for clear error and the district court's legal determinations de novo." United States v. Davis, 690 F.3d 226, 233 (4th Cir. 2012). "Where, as here, the challenged ruling entails the denial of a criminal defendant's motion to suppress, we view the evidence in the light most favorable to the government," and will not set aside an otherwise valid conviction if we "may confidently say, on the whole record, that [an error] was harmless beyond a reasonable

12

doubt." United States v. Holness, 706 F.3d 579, 588 (4th Cir. 2013) (internal quotation marks omitted).

Corsi maintains that testimony as to his October 26 statements was inadmissible because the interview was custodial, and he was not informed of and did not waive his Miranda rights. An individual is "in custody" -- and subject to Miranda safeguards -- despite the lack of formal arrest when, under the totality of the circumstances, his or her "freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440, (1984) (internal quotation marks omitted). Thus, "[t]he operative question is whether, viewed objectively, 'a reasonable man in [Corsi's] position would have understood his situation' to be one of custody." United States v. Hargrove, 625 F.3d 170, 178 (4th Cir. 2010) (quoting Berkemer, 486 U.S. at 442).

The district court found the agents' testimony as to the October 26 interview credible, and Corsi's contrary testimony not credible. We particularly defer to the district court's credibility determinations and construe the evidence presented in the light most favorable to the government. United States v. Mubdi, 691 F.3d 334, 339 (4th Cir. 2012). Given this standard, and considering the totality of the circumstances, we cannot hold the court erred in finding that Corsi was not in custody during the October 26 interview. Undoubtedly, there was some

13

coercive element to the interview, but "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). This interview, similar in its facts to those in Hargrove, 625 F.3d at 178-80, and United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001), is emblematic of the type of interview that, although containing coercive aspects, does not constitute a custodial interrogation requiring Fifth Amendment protections.[2]

Similarly, the district court did not err in admitting testimony as to Corsi's November 3 statements. Because Corsi admitted that the arresting officers adequately informed him of his Miranda rights, the only issue before the court was whether Corsi waived those rights. See United States v. Cardwell, 433 F.3d 378, 389 (4th Cir. 2005). Although waiver must be "knowing

---

[2] Further, Corsi's statements were neither coerced nor involuntary. Although Corsi maintains that he only agreed to the interview to protect Grist and his girlfriend, the record provides no indication that the agents made explicit threats to charge or arrest either party. Moreover, "[t]he mere existence of threats, violence, implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary." United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997). In this case, the Government proved by a preponderance of the evidence that Corsi's statements were voluntary.

14

and voluntary," it need not be express "and may be implied from the defendant's actions and words." Id. For "[w]hile law enforcement officers must immediately stop custodial interrogation when the defendant asserts his Miranda rights, they are free to engage in custodial interrogation when they have given Miranda warnings and the defendant does not specifically invoke those rights." Id. (citations omitted).

Here, the district court did not clearly err in finding not credible Corsi's testimony that he invoked, and was denied, his right to counsel several times after his arrest. Further, that Corsi answered questions during the interview is sufficient to constitute an implied waiver of his Miranda rights. Id. at 390; United States v. Frankson, 83 F.3d 79, 82 (4th Cir. 1996).

Corsi also challenges the district court's denial of his motion to sever his case. We review a district court's denial of a motion for severance for abuse of discretion. United States v. Lighty, 616 F.3d 321, 348 (4th Cir. 2010). As a general rule, particularly strong in conspiracy cases, "we adhere to the principle that defendants indicted together should be tried together, and a defendant must show that he was prejudiced by the denial of a severance motion in order to establish that the district court abused its broad discretion in that regard." Id.; see United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir. 1992).

15

Corsi contends that being tried with the more-cuplable Giles -- the kingpin of the marijuana distribution operation who also faced several firearms charges -- "compromised" his rights to a fair trial. However, "[a] defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." United States v. Akinkoye, 185 F.3d 192, 197 (4th Cir. 1999) (citation omitted). Moreover, Corsi does not allege that the court improperly instructed the jury on considering him separately from Giles, and points to no evidence that the jury had difficulty distinguishing them. See United States v. Strickland, 245 F.3d 368, 384 (4th Cir. 2001). In short, Corsi fails to demonstrate any prejudice sufficient to show that the district court abused its discretion in denying severance.

Corsi additionally appeals the court's denial of his motion for acquittal. We review a denial of a motion for acquittal de novo, affirming only if "there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010).

Corsi argues that, considering his "limited" interaction with the conspirators in the marijuana distribution scheme, the Government failed to put forth substantial evidence to prove

16

each element of his conspiracy charges.  We cannot agree.  A defendant's connection to a conspiracy need only be "slight" to support his conviction by substantial evidence.  United States v. Burgos, 94 F.3d 849, 861-62 (4th Cir. 1996) (en banc).  In this case, the Government's evidence -- including the text messages between Corsi and Giles, along with Corsi's own confessions -- suffices to support Corsi's conviction for the drug trafficking, money laundering, and money structuring conspiracies.  Accordingly, we affirm the district court's denial of Corsi's motion for acquittal.

Lastly, Corsi challenges the court's failure to hold sua sponte a forfeiture hearing under Fed. R. Crim. P. 32.2(b)(1)(B).  Corsi admits that the court has no obligation to hold a forfeiture hearing in the absence of a request by a party, but argues that the court gave him no opportunity to request a hearing.  However, the record belies Corsi's assertion, as both he and his counsel were provided an opportunity to object and speak at length regarding forfeiture during sentencing.  Corsi was on notice of all property subject to forfeiture as set forth in the indictment, and did not object at any point nor request a hearing.  Accordingly, we find no basis to vacate the district court's forfeiture order.

C.

Giles maintains that the district court erred by failing to continue sua sponte his sentencing hearing after he informed the court he had not read his PSR.[3] We review the failure to continue sua sponte a sentencing hearing for abuse of discretion. See Hedgepeth, 418 F.3d at 419. A court abuses its discretion when its failure to continue amounts to an "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (internal quotation marks omitted). We will reverse for abuse of discretion only if that abuse specifically prejudiced the defendant's case. Hedgepeth, 418 F.3d at 419.

The district court did not abuse its discretion in this case. Although Giles claimed he did not read his PSR, his counsel stated that Giles read the PSR through the glass at the jail, and had discussed the PSR with counsel prior to the hearing. Further, Giles' continued references to, and challenges of, his PSR during sentencing belie his claim that he had not yet read his PSR. In short, Giles failed to proffer any

---

[3] Although Giles also argued in his brief that the court improperly admitted testimony as to Corsi's redacted confessions, Giles conceded at argument that the testimony, admitted only against Corsi, did not violate Giles' Confrontation Clause rights under Bruton v. United States, 391 U.S. 123 (1968), and its progeny.

"justifiable request for delay" that the district court was not within its broad discretion to deny.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

19