21-2589
*United States v. Kaufman*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand twenty-three.

PRESENT:
        RICHARD J. SULLIVAN,
        JOSEPH F. BIANCO,
        MYRNA PÉREZ,
           *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

      v.                         No. 21-2589

ALAN KAUFMAN,

        *Defendant-Appellant.*<sup>*</sup>

_____

_____

<sup>*</sup> The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Defendant-Appellant:**          NELSON A. BOXER (Christina Karam, Paul-Gabriel D. Morales, *on the brief*), Petrillo Klein & Boxer LLP, New York, NY.

**For Appellee:**          DINA MCLEOD (Nicholas W. Chiuchiolo, Michael C. McGinnis, David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Alan Kaufman appeals following a jury trial in which he was found guilty of two counts of corruptly accepting gratuities as an officer of a financial institution, in violation of 18 U.S.C. § 215 (Counts Two and Four). The district court thereafter sentenced Kaufman to a term of forty-six months' imprisonment, to be followed by two years' supervised release. The district court also ordered Kaufman to forfeit specific property and to pay $2 million in restitution, a $30,000

fine, and a $200 mandatory special assessment. On appeal, Kaufman raises a litany of challenges to his conviction, sentence, and fine, and to the forfeiture and restitution orders, which we address in turn. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I.    Count Two

With respect to Count Two of the indictment, Kaufman attacks his conviction on three grounds, each of which we reject.

### A. Venue

*First*, Kaufman argues that the trial evidence was insufficient to establish venue, by a preponderance of the evidence, in the Southern District of New York. We review sufficiency-of-the-evidence challenges as to venue de novo. *United States v. Geibel*, 369 F.3d 682, 695–96 (2d Cir. 2004). A defendant challenging the sufficiency of the evidence nonetheless "bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). Although 18 U.S.C. § 215 does not expressly specify where venue lies, we have held that "[w]hen a federal statute defining an offense does not [so] specify," venue is proper in the district "where

3

the acts constituting the offense – the crime's 'essential conduct elements' – took place." *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999)). For an offense committed in more than one district, venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *see also United States v. Stephenson*, 895 F.2d 867, 874–75 (2d Cir. 1990).[1]

Count Two alleged that Kaufman accepted benefits from Tony Georgiton as a reward for favorable treatment by the Melrose Credit Union ("Melrose"), where Kaufman was the chief executive officer and treasurer. In particular, the indictment alleged that Georgiton purchased a house (the "Jericho Residence," or the "Residence"), in which he permitted Kaufman to live rent-free for more than two years before providing Kaufman with an unsecured loan of $240,000 to help him purchase the property outright. For his part, Kaufman arranged for Melrose to (1) approve certain loans to Georgiton's company and (2) pay for the naming-rights of a venue partially owned by Georgiton (the "Melrose Ballroom").

---

[1] We assume for purposes of this opinion that an offense under 18 U.S.C. § 215 is a continuing offense, a premise that both Kaufman and the government embraced in their appellate briefing.

With respect to venue, the evidence at trial demonstrated that Kaufman engaged a real-estate broker – the chairman of Melrose's supervisory committee – to help him locate a house for Georgiton to purchase with the understanding that Kaufman would live in it. And after Kaufman selected the Jericho Residence, he personally attended the closing – along with Georgiton, the real-estate broker, and a Melrose attorney who had agreed to represent Georgiton at Kaufman's request – at a law firm in Manhattan. Indeed, it was only after the closing in Manhattan that Kaufman received the keys to the Residence. Based on that evidence, a rational juror could have inferred that the closing constituted an act of acceptance of at least the free-rent gratuities and thus was a "crucial component[] of, not merely preparatory to," the gratuity scheme charged in Count Two. *Stephenson*, 895 F.2d at 874–75; *see also United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in any district where (1) the defendant intentionally or knowingly causes an act in furtherance of the changed offence to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue."). That Kaufman may have *agreed* to the scheme prior to the closing does not mean that the scheme ended then; section 215 criminalizes not just *agreeing to accept* gratuities but also *actually accepting* gratuities, and as

5

explained above, a jury could find that the closing was tantamount to Kaufman's acceptance of Georgiton's gratuities. *See* 18 U.S.C. § 215(a)(2) (imposing criminal liability for "corruptly accept[ing] *or* agree[ing] to accept[] anything of value" (emphasis added)).

## B. Constructive Amendment and Prejudicial Variance

*Second*, Kaufman contends that a new trial is warranted because the government's evidence at trial constructively amended, and prejudicially varied from, the indictment. More specifically, Kaufman argues that, while the indictment alleged that Kaufman caused Melrose to approve loans with favorable interest rates to Georgiton's company, the evidence at trial showed only that the loans were not compliant with Melrose's policies for loans – and specifically not compliant with Melrose's typical requirements concerning loan-to-value ratios, balloon terms, and cash-flow coverage.[2] We review claims of constructive amendment and prejudicial variance de novo. *See United States v. Dove*, 884 F.3d 138, 146, 149 (2d Cir. 2018).

---

[2] A balloon term is the time period in which the borrower is required to pay all outstanding principal or else refinance the loan.

6

Contrary to Kaufman's assertions, the indictment *did* allege that the loans were not in compliance with Melrose's lending policies. And subsequent pretrial disclosures provided Kaufman with the very documents the government would introduce to show that the loans were out-of-policy. As a result, there was no constructive amendment because the charge in Count Two of the indictment fairly notified Kaufman of the "core of criminality," or the "essence . . . in general terms," of the crime for which he was ultimately tried. *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012). Similarly, there was no variance because the facts in Count Two of the indictment were not "materially different" from the evidence presented at trial. *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003) (citation omitted). And even if it could be argued that there *was* a variance between the charging language and the evidence at trial, Kaufman would not have been prejudiced, given the notice he received through pretrial disclosures. *See United States v. Khalupsky*, 5 F.4th 279, 294 (2d Cir. 2021).

### C. Expert-Witness Exclusions

*Third*, Kaufman asserts that a new trial is warranted because the district court erred in excluding the testimony of two expert witnesses whom he wished to call. We cannot say, however, that the district court abused its discretion in

7

excluding the testimony of either.  *See United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021); *United States v. Jones*, 965 F.3d 149, 162 (2d Cir. 2020).

As to Ilan Guedj's proffered testimony, the district court reasonably concluded that expert testimony about interest rates was irrelevant and/or unduly confusing, as the government's trial theory did not turn on the existence of favorable interest rates.  Similarly, Guedj's proffered non-opinion testimony about amortization periods on Melrose loans to Georgiton before and after the alleged gratuities would have been an improper subject for expert testimony since it would have constituted a simple narration of the loan data that was not particularly complicated or beyond the grasp of the jury; it would also have been needlessly cumulative, given that the loans were already in evidence and given the minimal probative value of tracking amortization periods when gratuities can be both forward- and backward-looking.  *See United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 405 (1999).  Finally, Guedj's proffered testimony about the profitability of Melrose's relationship with Georgiton would have had little relevance to Kaufman's intent on the gratuity charge, which did not turn on whether Kaufman believed his actions to be "desirable or beneficial to Melrose" or whether he "would have taken the same action without a . . . reward."  J. App'x

8

at 2548[3]; *cf. United States v. Silver*, 948 F.3d 538, 562 n.14 (2d Cir. 2020); *United States v. Biaggi*, 909 F.2d 662, 683 (2d Cir. 1990); *United States v. Denny*, 939 F.2d 1449, 1452 (10th Cir. 1991). Indeed, the district court was justifiably concerned that inclusion of such testimony would have inappropriately implied to the jury that Kaufman could not have had the requisite intent if Melrose was not actually harmed by the loans.

Similarly, as to Neil Zoltowski's proffered testimony, the district court reasonably concluded that testimony about the meaning of intellectual-property terms in the Melrose Ballroom naming-rights agreement would have been an improper subject for expert testimony because nothing in that agreement was beyond the ken of the average juror. In addition, as with Guedj's proffered testimony on profitability, Zoltowski's proffered testimony about the benefits and value of the naming-rights agreement would have had little relevance to the gratuity charge, which did not turn on whether Kaufman believed the naming-rights agreement to be "desirable or beneficial to Melrose" or whether he "would have taken the same action without a . . . reward." J. App'x at 2548. And again, the district court was understandably concerned that Zoltowski's testimony

---

[3] Kaufman does not challenge on appeal these aspects of the jury charge.

9

would have inappropriately implied to the jury that Kaufman could not have had the requisite intent if Melrose was not actually harmed by the agreement.

## II.    Count Four

Kaufman mounts two challenges to his Count Four conviction.  Again, we are not persuaded.

### A.  Safe-Harbor Provision

*First*, Kaufman argues that the trial evidence was insufficient to show that the lavish vacations he solicited and accepted from Melrose's vendor, CBS Radio, fell outside section 215's safe-harbor provision, which provides that the statute "shall not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, *in the usual course of business*."  18 U.S.C. § 215(c) (emphasis added); *cf. United States v. Rooney*, 37 F.3d 847, 854 (2d Cir. 1994) (discussing identically worded safe-harbor provision in 18 U.S.C. § 666).  We disagree.  Viewed in isolation, CBS Radio's awarding of vacations could be construed as an incentive offered in the ordinary course of its sales program.  But as Kaufman conceded at oral argument, the jury was not required to view CBS Radio's program in isolation; instead, the jury was also free to consider that Melrose had a written policy that expressly prohibited employees from accepting

10

anything worth over $100 from a vendor.  Given Kaufman's concession and Melrose's policy, we conclude that a juror could reasonably infer that the vacations did not constitute "bona fide . . . expenses paid or reimbursed[] in the usual course of business."  18 U.S.C. § 215(c).

### B.  Jury Instruction

*Second*, Kaufman asserts that a new trial is warranted because the district court improperly responded to a jury note.[4]  A district court's response to a jury note "is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."  *United States v. Moran-Toala*, 726 F.3d 334, 342 (2d Cir. 2013) (citation omitted).  We review preserved claims of error in supplemental jury instructions de novo, "reversing only where, viewing the charge as a whole, there was a prejudicial error."  *United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003).  But where such a claim is unpreserved, we review solely for plain error.  *See United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020); Fed. R. Crim. P. 52(b).

---

[4] Kaufman briefly alludes to error in the *original* jury instructions – specifically that the district did not properly instruct the jury on the applicable burden of proof for the safe-harbor defense. Because Kaufman has presented no developed argument on this alleged error, we find the issue forfeited and decline to consider it.  *See United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013).

Here, the jury submitted a question referencing the district court's prior instruction on the prima facie elements of a section-215(a)(2) violation and asking whether "the mere acceptance of a trip with value over $1,000 from a vendor [is] by itself a violation of the law." J. App'x at 2586. Kaufman requested that the district court simply answer "no." *Id.* at 1234. But the district court, over Kaufman's objection, gave a more fulsome answer. On appeal, Kaufman alleges two errors, one preserved and one not.

Kaufman's preserved objection – that the supplemental instruction was non-responsive to the question of whether "mere acceptance [of a trip,] by itself" satisfied section 215(a)(2)'s intent element, *id.* at 1234–35 – is unavailing because the district court did not mistakenly instruct the jury on intent. To the contrary, the district court properly explained that the government "must prove each of the four elements" of section 215(a)(2) and redirected the jury to the relevant prior instructions, which included a lengthy description of the intent element, to which Kaufman makes no objection on appeal. *Id.* at 1236; *see also id.* at 2543–50. Moreover, the district court reiterated that "[i]n the event . . . that the government proves that the defendant solicited or accepted a trip valued at more than a thousand dollars and fails to prove beyond a reasonable doubt any one, two, or

12

three of the other elements of the offense" – which, again, the district court had just made clear included the intent element – "then you must acquit." *Id.* at 1236. On this record, we see no basis to conclude that the district court made any error, let alone prejudicial error.

Similarly, Kaufman's non-preserved objection – that the response was inadequate in that it directed the jury to convict if the government proved all four elements of section 215(a)(2), without reminding the jury of the safe-harbor defense under section 215(c) – was not plain error. The jury asked a targeted question about the elements of section 215(a)(2), and the district court gave a targeted answer; it is neither clear nor obvious that the district court was also required to renew its previous warning about the separate safe-harbor defense. *See United States v. Gengo*, 808 F.2d 1, 4 (2d Cir. 1986) ("[T]he legal sufficiency of the supplemental charge must be assessed in the context of the instructions as a whole." (citation omitted)).[5]

---

[5] Contrary to Kaufman's assertions, this case is not materially similar to *United States v. Velez*, where we found prejudicial (not plain) error when the district court omitted an essential element of the alleged offense when responding to a jury's *general* request for "[c]larification on all the counts." 652 F.2d 258, 261–62 & n.3 (2d Cir. 1981).

**III.    Sentence**

As to his sentence, Kaufman contends primarily that the district court's imposition of a forty-six-month term of imprisonment – to run concurrently on both counts – was procedurally unreasonable, as the district court erred in applying an enhancement pursuant to section 2B4.1(b)(1) of the United States Sentencing Guidelines.  Assuming (without deciding) that the district court did err in applying the enhancement, we find that any such error was harmless:  the district court repeatedly stated that, even if the enhancement did not apply and the appropriate Guidelines range was six to twelve months, it would "impose exactly the same sentence."  J. App'x at 626, 670–71; *see United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) ("Where we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." (internal quotation marks omitted)).[6]

---

[6] We also see no error in the district court's imposition of a $30,000 fine, as there is no support in the record for Kaufman's claim that the fine was based on the offense level calculated in the Presentence Report.  Indeed, we note that even if the section 2B4.1(b)(1) enhancement did not apply and Kaufman received his desired offense level, the fine imposed fell within the Guidelines range.  *See* U.S.S.G. § 5E1.2.

We likewise reject Kaufman's contention that the district court's sentence was substantively unreasonable. As we have explained, we only find sentences substantively unreasonable if they are "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted). In light of the significant value of the gratuities received by Kaufman, we cannot say that Kaufman's forty-six-month sentence is unreasonable.

That Georgiton received a comparatively light sentence is of no moment. As we have made clear, while "[18 U.S.C. §] 3553(a)(6) requires a district court to consider nationwide sentence disparities," it "does not require a district court to consider disparities between co-defendants." *United States v. Ghailani*, 733 F.3d 29, 55 (2d Cir. 2013) (citation omitted). In any event, Kaufman's conduct readily distinguishes him from Georgiton, who owed no fiduciary duties to Melrose and who took responsibility by pleading guilty before trial.

## IV. Restitution and Forfeiture Orders

Additionally, Kaufman challenges the district court's orders (1) requiring him to pay restitution to Melrose's insurer for the fees he caused Melrose to pay

15

for the naming rights to the Melrose Ballroom, and (2) directing him to forfeit the Jericho Residence. We see no error in either order.

### A. Restitution Order

We review the district court's order of restitution for abuse of discretion. *See United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006). Under the Mandatory Victims Restitution Act, a sentencing court must order a defendant convicted under 18 U.S.C. § 215 to "make restitution to the victim of the offense," where "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), (c)(1)(B). The victim must be "a person directly and proximately harmed as a result of the commission of [the] offense," *id.* at § 3663A(a)(2), and "only a victim's actual loss is compensable, not losses that are hypothetical or speculative," *United States v. Maynard*, 743 F.3d 374, 378 (2d Cir. 2014) (internal quotation marks omitted). Applying these standards, the district court reasonably determined that the Melrose Ballroom naming-rights agreement had no value to Melrose and that the insurer's actual loss amount was therefore $2 million. Furthermore, the district court reasonably determined that Kaufman proximately caused the loss. Kaufman's contention that he could not have done so since *one* of the alleged gratuities *post-dated* the signing of the naming-rights

16

agreement is unpersuasive, ignoring that there were *multiple* gratuities at issue and that gratuities can be *forward- or backward-looking*. *See Sun-Diamond*, 526 U.S. at 405.

### B. Forfeiture Order

Regarding the forfeiture order, we review the district court's legal conclusions de novo and its factual findings for clear error. *See United States v. Sabhanani*, 599 F.3d 215, 261 (2d Cir. 2010). As an initial matter, we reject the contention that Kaufman was entitled to a jury determination on the forfeiture counts of the indictment. The Federal Rules of Criminal Procedure require that "if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." Fed. R. Crim. P. 32.2(b)(5)(A). The district court complied with that requirement, specifically asking Kaufman before deliberations whether he wanted to submit the forfeiture issue to the jury, to which Kaufman requested that the issue be deferred until after the verdict. Once the verdict was in, the district court asked whether there was any reason not to dismiss the jury, and defense counsel responded that the jury could be dismissed. As a result, Kaufman waived his right to seek a jury determination on forfeiture.

17

We also reject Kaufman's contention that vacatur of the forfeiture order is warranted because the district court violated Rule 32.2(b)(2)(B) by issuing the preliminary order of forfeiture during, rather than "in advance of," sentencing. Fed. R. Crim. P. 32.2(b)(2)(B). The untimeliness of the district court's entry of a preliminary forfeiture order, however, does not render the forfeiture invalid. *See United States v. McIntosh*, No. 14-1908, 2023 WL 408588, at *2–4 (2d Cir. Jan. 25, 2023). Equally unavailing is Kaufman's argument that he was improperly denied a hearing under Rule 32.2(b)(1)(B). Kaufman points to no place in the record where he actually requested a hearing, as required by that rule. *See* Fed. R. Crim. P. 32.2(b)(1)(B). To the contrary, Kaufman made legal arguments regarding forfeiture in his sentencing submission – arguments which he then amplified at the sentencing hearing – but never made a request for a separate forfeiture hearing. On these facts, we see no error, let alone reversible error, with respect to the lack of a forfeiture hearing. *See, e.g., United States v. Giles*, 518 F. App'x 181, 188 (4th Cir. 2013).

Finally, we agree with the district court's substantive determination that the Jericho Residence was forfeitable. When the government seeks forfeiture, "the [sentencing] court must determine whether the government has established the

18

requisite nexus between the property and the offense" by a preponderance of the evidence. Fed. R. Crim. P. 32.2(b)(1)(A); *see United States v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011). Here, 18 U.S.C. § 982(a)(2) supplies the meaning of "requisite nexus" when it makes forfeitable "property constituting, or derived from, proceeds the [defendant] obtained directly or indirectly, as a result of" the criminal violation. 18 U.S.C. § 982(a)(2).

Again, the evidence at trial showed that Georgiton had Kaufman select the Jericho Residence before Georgiton purchased it; Kaufman then lived there rent-free for over two years; and when Kaufman ultimately gained title to the Jericho Residence, the transaction was financed in part through an unsecured $240,000 loan from Georgiton and a $200,000 loan from Melrose co-signed by Georgiton. As a result, we see no error in the district court's determination that the Jericho Residence *itself* – even if later purchased by Kaufman in part with legitimate funds – could be viewed as a gratuity and thus "property constituting . . . proceeds [Kaufman] obtained directly or indirectly, as a result of" the criminal violation. 18 U.S.C. § 982(a)(2); *cf. United States v. Peters*, 732 F.3d 93, 99–102 (2d Cir. 2013)

(holding that the term "proceeds" in 18 U.S.C. § 982(a)(2) refers to "gross receipts," not only "profits," and emphasizing the punitive aspect of criminal forfeiture).[7]

\*     \*     \*

We have considered Kaufman's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

---

[7] After surveying all potentially relevant factors, we also reject Kaufman's contention that forfeiture of the Jericho Residence would violate the Eighth Amendment. *See United States v. Bajakajian*, 524 U.S. 321, 337–40 (1998); *United States v. Viloski*, 814 F.3d 104, 110–13 (2d Cir. 2016).